JOHN LUDLUM *vs.* SAMUEL ROTHSCHILD.

July 15, 1889.

Sale Expressly Subject to Chattel Mortgage — Buyer Estopped to Question Mortgage for Fraud.—A executed a mortgage on personal property, (which was duly filed,) and subsequently sold the property to B, by bill of sale expressly subject to the mortgage. B subsequently executed a mortgage to C. *Held,* that B was not a purchaser "in good faith," and hence could not attack the first mortgage on the ground of fraud, (following *Tolbert* v. *Horton,* 31 Minn. 518,) and that C under his mortgage took no greater interest in the property than his mortgagor, B, had.

Lease—Chattel-Mortgage Clause—Effect of Termination by Lessor. Where a lease contains a "chattel-mortgage clause" as security for the performance of the covenants of the lease on the part of the lessee, the election of the lessor to terminate the lease (in accordance with its provisions) for breach of the covenants does not release or discharge the lien of the mortgage.

Chattel Mortgage—After-Acquired Property.—Where parties by their contract in clear terms express an intention to create a mortgage lien upon personal property, not then owned but to be subsequently acquired by the mortgagor, whether then in being or not, the mortgage attaches as a lien on the property as soon as the mortgagor acquires it, as against him and all claiming under him with notice or by voluntary conveyance, the same as if the property had belonged to him when the mortgage was executed.

Appeal by plaintiff from an order of the district court for Hennepin county, refusing a new trial after a trial before *Young,* J., and verdict directed for defendant.

*Gilger & Harrison,* for appellant.

*S. Meyers* and *Thos. Canty,* for respondent.

MITCHELL, J.    This was an action to recover damages for the wrongful conversion of certain personal property, consisting of the fixtures and furniture in a building in the city of Minneapolis occupied as a saloon.    Both parties claim under one Elkan.    In 1886, plaintiff, the owner of the building, rented to Elkan for the term of 15 years at a yearly rental of $3,600, payable $300 a month in advance.    The

lease contained various covenants on the part of Elkan, also a provision that if any of these covenants should not be kept by him the plaintiff might cancel and annul the lease, and re-enter.   The instrument, which was executed and acknowledged by both parties, contained a "chattel-mortgage clause" to the effect that the lessee expressly pledged and mortgaged to the lessor all the fixtures, furniture, etc., "which is now or may at any time hereafter be" on the demised premises, for the faithful performance and strict fulfilment of all the covenants of the lease; and in case of any default on part of the lessee in any of these covenants, the lessor might take possession of the pledged and mortgaged property and sell the same, and out of the proceeds pay and discharge "all rents, *damages* and expenses" which might at that time be due and incurred.   This instrument was filed in the office of the city clerk.   The property in controversy was the furniture and fixtures which Elkan put into the building, and which remained there until taken by the defendant in June, 1888. On February 18, 1888, Elkan executed a bill of sale of the property to one Littman, which was expressly made "subject to such lien or mortgage on said property as is given by the lease of said premises made by John Ludlum to said Elkan."   On the same day Littman executed a mortgage on the property to the defendant.

Elkan and his subtenants or assigns remained in possession of the premises until about July 1, 1888.   The rent was paid up to March 15, 1888, since which time nothing has been paid for the use and occupation of the premises, except $210 paid by one Palmer.   It is alleged in the answer and (as we will assume) admitted in the reply that on or prior to March 12, 1888, Elkan had broken some of the covenants of the lease, on account of which plaintiff elected to treat the lease as terminated, and on that day commenced an action to recover possession of the premises, in which he obtained judgment July 7, 1888.   Plaintiff claims the property under the "chattel-mortgage clause" in the lease, and defendant under the mortgage from Littman.   When the plaintiff rested, the court directed a verdict for defendant, which is assigned as error.

The defendant claims that this direction was justified on two grounds:

1. There was evidence which it is claimed próved that the mortgage from Elkan to plaintiff was coupled with an agreement that the mortgagor might sell and dispose of the property for his own use without paying the mortgage, and this it is claimed rendered it fraudulent under the statute as to defendant. The sale by Elkan to Littman, it will be remembered, was expressly made subject to the plaintiff's mortgage. This was actual notice to Littman of the existence of the mortgage, and therefore he was not a purchaser "in good faith" within the meaning of the statute, and hence could not have attacked the mortgage on this ground. *Tolbert* v. *Horton*, 31 Minn. 518. Defendant acquired his interest under Littman and stands in his shoes. He is simply mortgagee of whatever Littman took by his bill of sale, which, under the circumstances, was the equity of redemption subject to the plaintiff's mortgage. He certainly can stand in no better position than his mortgagor under whom he claims. This disposes of the first point.

2. It is contended that plaintiff's bringing an action for the possession of the leased premises was equivalent in law to an entry, so that from the time of its commencement the lease was terminated, and no subsequent rent could be recovered, there being no provision that the plaintiff might re-enter without such re-entry working a forfeiture of the rents and of the covenants to be performed on part of Elkan. The claim is that the whole instrument, "chattel-mortgage clause" included, terminated and was no longer of any force or effect. Considering it as a lease merely, these propositions are probably correct. But the instrument has a dual character. It is both a lease and a mortgage—as much so as if in two separate writings. The termination of the lease did not release or discharge the lien of the mortgage. While it may be true that after plaintiff's election to terminate the lease no more "rent," as such, could be recovered, yet he would be entitled to recover, by way of damages, for the use and occupation of the premises from March to July while the lessee wrongfully withheld the possession; and the rent contracted for in the lease would be at least *prima facie* the measure of damages. Had the mortgage been merely to secure the payment of "rent," there might have been a question whether it would cover the use and oc-

cupation after the termination of the lease. But it was by its terms security for the performance of all the covenants in the lease, among which was one that the lessee would quit and deliver up the premises at the end of the term of the lease or at any previous termination thereof for cause. And out of the proceeds of the mortgaged property the lessor was authorized to pay and discharge, not merely all rents, but also all *damages,* etc. It was damages resulting from just such violations of the covenants of the lease as occurred in this case which the parties had in mind, and which the mortgage was intended to secure. It would certainly be strange if the lessee could, by the violation of his contract, compel the lessor to elect between waiving his right to terminate the lease, and abandoning his mortgage security. We are therefore of opinion that the court erred in directing a verdict for defendant. Upon the undisputed evidence in the case the plaintiff was entitled to a verdict for the value of the property, at least to the extent of the amount due him for the use and occupation subsequent to March 15th.

3. This renders a new trial necessary, and with reference to this it becomes proper to consider a third question. It appears that two or three articles of the furniture and fixtures did not belong to Elkan at the time the lease was executed, but that he purchased them subsequently and put them in the premises.

The question as to the validity and effect of a mortgage of future property not *in esse* or not owned by the mortgagor at the time, is one upon which much has been said and written. At common law a mortgage could operate only on property actually in existence at the time of giving the mortgage and then actually belonging to the mortgagor. This doctrine, being founded upon a technical rule, was frequently evaded or modified. For example the courts invented the doctrine of "potential existence," so as to extend the operation of a mortgage to property "potentially" belonging to the mortgagor as an incident of other property then in existence and actually belonging to him, as, for instance, crops to be raised on land of which he was presently in possession. This is as far as this court has heretofore had occasion to go. *Minn. Linseed Oil Co.* v. *Maginnis,* 32 Minn. 193, (20 N. W. Rep. 85;) *Miller* v. *McCormick Harvesting*

*Mach. Co.*, 35 Minn. 399, (29 N. W. Rep. 52.)   Then again it was
sometimes held that although not good as a mortgage, such an in-
strument was valid as an executory agreement for a mortgage, which
would authorize the contractee to take possession of the property as
soon as it was acquired by the contractor, provided he did so before
third parties acquired any rights.   A different rule however obtained
in equity.   There it was held that while the mortgage did not pass
the title to such property, it created an equitable interest in it, which
would prevail against creditors and purchasers with notice or with-
out consideration although the mortgagee had not taken possession.
The theory on which this proceeded was that the mortgage was op-
erative as an executory agreement, which attached to the property
when acquired and in equity transferred the beneficial interest to
the mortgagee, the mortgagor being a trustee for him of the legal
title, and that equity would consider that done which ought to be done.
This has been the settled law in England ever since the decision,
over 25 years ago, of *Holroyd* v. *Marshall*, 10 H. L. Cases, 191.   The
same doctrine was announced in this country over 45 years ago by
Judge Story in *Mitchell* v. *Winslow*, 2 Story, 630, and has long been
the doctrine of the federal courts, notably in the administration and
distribution of estates in bankruptcy.   It is becoming, if it is not al-
ready, the prevailing doctrine of the state courts.   Without troub-
ling ourselves about the fictions and technical reasons (of no practi-
cal value or interest) resorted to in order to reach it, we consider
the result arrived at sound in principle.   We are of opinion that, ex-
cept in cases prohibited by statute, (see Laws 1887, *c.* 176,) whenever
the parties by their contract in clear terms express an intention to
create a positive lien upon personal property, not then owned but to
be subsequently acquired by the mortgagor, whether then *in esse* or
not, the mortgage attaches as a lien on the property as soon as the
mortgagor acquires it, as against the mortgagor and all claiming un-
der him either by voluntary transfer or with notice, precisely as if
the property had been in being and belonged to the mortgagor when
the mortgage was executed.

Of course it is necessary, as in the case of any mortgage, that the
property should be definitely pointed out, so that it may be distin-

guished or identified. This was sufficiently done in this case by describing it as all the fixtures and furniture of the lessee which are now or may at any time hereafter be in the demised premises.

Order reversed.

NOTE. A motion for reargument of this case was denied August 20, 1889.