ceeding containing any of the defects referred to is brought before the court, it is to be corrected or the defect disregarded. Presenting the objection founded on the mistake or defect will at once bring the power to amend into activity, to be followed and applied to its correction. And that this is a proper case for correction follows from the fact that the affidavits proved the fact that Dimmick, although previously a resident of the state, had departed from it under circumstances evincing his intention to be not to return again, but to remain away from the state, and that at once terminated his residence in the state. From that time and his arrival there, he became a resident of Canada, which was the ground upon which the Continental Insurance Company obtained its attachment. No length of residence was necessary to produce this change, but it was effected when he left this state, as he must be inferred to have done, and took up his residence in Canada, to avoid the punishment he had incurred for the violation of its laws. The case is unembarrassed by the uncertainty which was presented in Mayor v. Genet, 4 Hun, 487, affirmed 63 N. Y. 646, for his departure from the state could not surely be made to appear; but yet it was held that he had probably departed from its boundaries, and could be held to have become a resident of some other state or country. In this case no reason arises for doubting the fact that this defendant did leave this state and proceed to another country, intending there to take up his immediate residence, and to remain, which at once ended his residence here and transferred it to Canada. The residue of the recital in this attachment has also proceeded so far as to suggest the making of a change of residence by the debtor, for it is said that he 'has departed therefrom,' and the additional fact that this was with the intent to defraud his creditors indicates the departure to have been permanent for the time from which it might be plausibly inferred that he had ceased to be a resident of this state. But without depending upon this criticism it must, under the authorities, as well as the statutes, be held that whatever error or misrecital has taken place has been in no way injurious to the defendant or the Continental Insurance Company, and must be either disregarded or allowed to be amended. The motion will therefore be denied, without costs; and, if the plaintiff shall elect to amend this recital, it will be allowed to be done by stating the nonresidence of the defendant in its attachment, on payment of ten dollars costs of opposing the motion."

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

Butler, Stillman & Hubbard, (Ansley Wilcox, of counsel,) for appellant.

Evarts, Choate & Beaman, (Henry W. Hardon and Treadwell Cleveland, of counsel,) for respondent.

PER CURIAM. Plaintiff's motion to dismiss appeal denied, with $10 costs and disbursements. Order appealed from affirmed, on opinion of DANIELS, J., at special term.

<hr>

(66 Hun, 636; mem. report without opinion.)

PAGE et al. v. LARROWE, (six cases.)

(Supreme Court, General Term, Fifth Department.  January 18, 1893.)

1. CHATTEL MORTGAGES—WHAT SUBJECT TO—FUTURE CROPS.
    A crop to be planted in future by a lessee whose term has not commenced has not a potential existence, and a mortgage thereof to the lessor to secure an antecedent debt is void. Rochester Distilling Co. v. Razy, 20 N. Y. Supp. 583; Cressey v. Sabre, 17 Hun, 120,—followed. Smith v. Taber, 46 Hun, 313, dist'nguished.

**2. SAME—LESSEE NOT IN POSSESSION.**

A lessee, after the execution of the lease, but before the commencement of his term, is not the owner of the demised premises, and therefore he has not a potential ownership in the grass to be cut thereon during the term, and a mortgage by him of such grass is void.

Appeal from Steuben county court.

Action by Esek Page and others against Albertus Larrowe, and five other cases, for conversion. A judgment of the justice of the peace in favor of plaintiffs was reversed by the county court, and plaintiffs appeal. Affirmed.

Rumsey, J., acting as county judge, filed the following opinion:

This case, with five others, is an appeal from a judgment rendered by a justice of the peace, and it has been certified into this court. The facts are quite simple. In November, 1886, one Teeter rented of Ella M. Tucker a farm, by lease to begin March 1, 1887. At the time of making the lease Teeter owed Mrs. Tucker $505. To secure this sum he gave her a chattel mortgage upon all of his share of grain, potatoes, straw, hay, and stock that is growing or to be sowed or grown on the farm which he had leased. The debt to secure which the mortgage was made was due in part January, 1889. Tucker went into possession of the farm under his lease in March, 1887, and in proper time that spring he sowed buckwheat and planted potatoes. He cut the grass growing upon the farm as it became fit. Afterwards, and in the fall of 1887, Teeter sold to Larrowe 84 bushels of the buckwheat, which Mr. Larrowe made into flour and sold. The chattel mortgage was afterwards sold to the plaintiffs, who sued Larrowe for the conversion of the buckwheat. The point is made by Larrowe in this appeal, which he takes from the judgment against him in that action, that the grain had no existence, and had not even been sown, when this mortgage was made, and therefore the mortgage was void. The fact is that, not only was the grain not in existence, but the term of the lessee, Teeter, had not begun, when he made this mortgage. The mortgage was not made to secure the rent, but a debt which had no connection with the rent. In examining the point raised by defendant, it is to be remembered that the action was originally brought in a justice's court, and therefore no equities of the parties can be regarded or protected. Cressey v. Sabre, 17 Hun, 120. The single question is, what are the legal rights of the parties. The rule at law with regard to the validity of chattel mortgages is well settled that such a mortgage can operate only on property actually in existence at the time of giving the mortgage, and then belonging to the mortgagor, or potentially belonging to him as an incident to other property of his, then in existence. If he does not own the goods mortgaged, or if they do not potentially exist, the mortgage is void at law. Brunswick, etc., Co. v. Stevenson, (Sup.) 4 N. Y. Supp. 123. Property is said to belong to one "potentially" when it is the ordinary increase or growth of other property which he has; as, fruit or grass from his farm, or milk from his cow, or wool from his sheep. Conderman v. Smith, 41 Barb. 404; Farmers' Loan & T. Co. v. Long Beach Imp. Co., 27 Hun, 89. In this case Teeter, when the mortgage in question was made, had not sowed the buckwheat. Indeed, he did not sow it until June 1887. So far as crops subsequently put in are concerned, the case is like that of Cressey v. Sabre, 17 Hun, 120, and within the rule of that case the judgment against Larrowe must be reversed. Milliman v. Neher, 20 Barb. 37; Williams v. Briggs, 16 Alb. Law J. 387; McCaffrey v. Woodin, 22 Amer. Rep. 653, note. But the plaintiffs claim that the case of Cressey v. Sabre has been overruled by the later case of Smith v. Taber, 46 Hun, 313. That case, however, does not overrule Cressey v. Sabre, but the opinion expressly says that the two cases are not alike. In Smith v. Taber the tenant, under whom the purchaser claimed, had agreed in the lease that the plaintiff, who was his landlord, should have a lien upon the title to all the crops to secure the rent, and that fact is relied upon by the court to take the case out of the rule of Cressey v. Sabre. But that is not the state of affairs here. The mortgage to

Mrs. Tucker had nothing to do with the rent, but was entirely a separate matter. Had the lease under which Teeter took the right to put in the crops provided that the title to them should vest in the landlord, and had the plaintiffs claimed under that contract, a different question would have been presented, and the case would have been within Smith v. Taber. But that state of affairs is distinguished by the court in Cressey v. Sabre. In those cases the right of the landlord to the crops is not put upon the ground that the provision in the lease operates as a chattel mortgage, but that the crop becomes the property of the landlord as soon as it begins to exist, by virtue of the contract which brings it into being, (Andrew v. Newcomb, 32 N. Y. 417, 419,) and the tenant never had any title to it. Such is clearly the ground upon which the court puts the decision in the case of Smith v. Taber in distinguishing it from Cressey v. Sabre. But that is not the case here, for when the crop was sowed it belonged to Teeter, and his mortgage was void, because it was given before the property had come into existence. These considerations control also the case of Herbert, so far as the plaintiffs were allowed to recover for the potatoes planted by Teeter. But the rye bought by him presents a different state of facts. That was put in by Mrs. Tucker before the lease of Teeter, and it belonged to her, and it passed to plaintiffs by the chattel mortgage made by her, which was duly filed. As to the rye, the judgment against Herbert must be affirmed.

Besides the two cases against Larrowe and Herbert, spoken of above, the plaintiffs recovered four other judgments for hay which had been cut by Teeter, in the summer of 1887, on this farm, and had been by him sold to the several defendants against whom the judgments were recovered. None of these defendants are shown to be purchasers of the hay in good faith for value paid at the time, and therefore the only question presented is whether the hay, which was cut in the summer of 1887, was intended to be covered by the mortgage which Teeter gave to Mrs. Tucker. As we have seen, the hay, which was made from grass growing upon that farm, was potentially the property of the person owning the farm, and it might have been mortgaged as the property of such owner in the fall of 1886. The question, then, is whether Teeter was such owner in the fall of 1886. The lease was dated November 20, 1886, which was the date of the mortgage, and it took effect on the 1st day of March, 1887. Between the date of the lease and the 1st day of March, 1887, Teeter had an interest in the "term," as it is called. Young v. Duke, 5 N. Y. 463, 467; Leake, Real Prop. 314. Such an interest, however, is a right and not an estate in the land, notwithstanding such right is in the lessor. Doe v. Walker, 5 Barn. & C. 111. The estate of the lessee continues during the term granted, and that term does not begin until the time at which the lessee has the right to go into possession. Until that time, therefore, the lessee Teeter was not, in any sense, the owner of the farm. Now, as we have seen, one can be said to be the potential owner of property only when he is the actual owner of other property, of which the potentially owned property is a natural incident of growth. In this case, while the hay was the natural incident of the farm, Teeter had no interest in the farm when he made the mortgage, and therefore was not the potential owner of the hay. For that reason he did not, by his mortgage, create a lien on the hay. But the plaintiffs claim not only under a mortgage made by Teeter, but also under one made by Mrs. Tucker, in November, 1886. She was then the owner and in possession of the farm. A mortgage made by her on the grass growing on the farm, which should thereafter be made into hay, if properly filed, was good as to third parties, whatever may have been its effect upon the rights of Teeter, or however it may have made her liable to Teeter upon her implied covenant for quiet enjoyment. It follows that the plaintiffs claim the hay under the chattel mortgage of Mrs. Tucker.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

D. M. Darrin, for appellants.
O. S. Searl, for respondent.

PER CURIAM. Judgment appealed from affirmed, with costs, on opinion of Rumsey, J., and on authority of Rochester Distilling Co. v. Razy, 20 N. Y. Supp. 583.

---

### HOFFELD v. ZEUZIUS.

(Supreme Court, General Term, Fifth Department. April 13, 1893.)

CONTRACTS—INTERPRETATION.

 Defendant entered into an agreement with one K., by which K. was to sell defendant's land for $25,000, and defendant, "when there shall have been paid to him on said contract of sale the sum of $20,000, and interest thereon," was to transfer to K. or his assignee, "said contract of sale, and all sums due, or to grow due thereunder." *Held,* that the provision as to interest related only to the $20,000, on payment of which K. was entitled to the remaining $5,000, with interest.

Appeal from special term, Erie county.

Action by Rudolph Hoffeld against Jacob Zeuzius. There was a judgment for plaintiff, from which defendant appeals. Affirmed.

Argued before DWIGHT, P. J., and LEWIS, MACOMBER, and HAIGHT, JJ.

George Wadsworth, for appellant.

Moses Shire, for respondent.

LEWIS, J. The defendant, being the owner of a parcel of land in the city of Buffalo, on the 25th day of March, 1884, entered into a written agreement, under seal, with one Paptiste Kahabka, by the terms of which the defendant agreed to sell to Kahabka said land for the sum of $25,000 upon the terms and conditions stated in the contract. Thereafter, and on the same day, another agreement was executed between said parties, materially changing the terms and conditions of the first agreement. The agreements were read in evidence, and marked Exhibits "A" and "B." Exhibit B recites:

"That whereas, Jacob Zeuzius, party of the first part, has this day agreed for the sum of $25,000.00 to convey to Kahabka, party of the second part, or to such person, persons, or association as said second party may hereafter designate, certain real estate situate in said city of Buffalo, more particularly referred to in said agreement to sell; and whereas, Kahabka has performed certain services in the sale of said lots, and has assumed certain obligations, and agreed to perform certain services, in disposing of said land and collecting the payments thereon: Now, therefore, this agreement witnesseth, that in consideration of the premises, and of one dollar to him duly paid, the party of the first part hereby agrees that, whenever there shall have been paid upon the aforesaid contract of sale the sum of $3,000.00, said party of the first part will thereupon pay to the said party of the second part, or his assignees, for his services, the sum of $150.00 which shall be next thereafter received on said contract of sale, and thereafter, so often as said party of the first part shall receive the sum of three thousand dollars on said contract, the next $150.00 received thereon shall be paid to second party, or his assignees. Said party of the first part further agrees that when there shall have been paid to him on said contract of sale the sum of $20,000.00, and interest thereon, according to the terms of said contract, over and above such sums as shall have been paid to said second party, or his assignee, as here-