## IVERSON v. SOO ELEVATOR COMPANY.

Where, in an action for conversion of mortgaged grain raised by a tenant, it was necessary to establish a division of the grain between the tenant and his landlord, evidence of conversations in which the landlord directed the tenant to make a division, in accordance with which instructions a division was made at the thresher, was not objectionable as hearsay, though none of defendant's representatives were present.

Rev. Civ. Code, § 2024, declares that an agreement may be made to create a lien on property not yet acquired by the mortgagor or not yet in existence, in which case the lien attaches from the time the party agreeing to give it acquires an interest in the thing to the extent of such interest. **Held,** that where a tenant before acquiring a lease on certain land mortgaged the crop to be grown thereon, and thereafter leased the land and raised a crop, the mortgage was valid.

(Opinion filed, February 10, 1909.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by Peter Iverson against the Soo Elevator Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Affirmed.

*Joe Kirby,* for appellant.

The conversation between the landlord, Simpson, and the tenant, as to what should be done with the grain was hearsay, and since it had especial reference to the pivotal point in the case, namely, the division of the grain, it was prejudicial. Starkweather v. Bell, 12 S. D. 146; Miller v. Durst, 14 S. D. 587. Until a division of the grain its title and possession were vested in the landlord and the record does not disclose a division. Lloyd v. Powers, 4 Dak. 63; Consolidated Land Co. v. Hawley, 7 S. D. 232; Angell v. Egger, 71 N. W. 547-49; Sanford v. Modine, 71 N. W. 740; Clendening v. Hawk, 79 N. W. 878; Parker v. Bank, 54 N. W.

313; Lane v. O'Toole, 78 N. W. 79; Omlie v. Farmers' Bank, 80 N. W. 690. To entitle one to maintain an action for the conversion of personal property, he must show that at the time of the alleged conversion he had possession, or a legal right to the immediate possession, and a general or special ownership in the property converted. Parker v. Bank, 54 N. W. 313; 3 N. D. 87.

*Bates & Parliman,* for respondent.

The two persons interested in the division of the crop were Simpson and Beddoe, and not the defendant. Under the contract, the division was to be made by Simpson on the farm. He could either waive this provision or could delegate authority to Beddoe or any other person to make the division for him. In this case he authorized Beddoe to make the division, and what he said to Beddoe in regard to the matter is competent evidence and not hearsay. Under our statute, it makes no difference whether Beddoe had any interest of any kind whatever in the land upon which the mortgaged crop was to be grown, at the time the mortgage was given. If he afterwards acquired an interest in the crop, the lien of the chattel mortgage would attach from the time it was acquired by the mortgagor. Sec. 2024, Rev. Pol. Code.; Merchant's National Bank v. Mann, 51 N. W. 946; Hostetter v. Brooks El. Co., 61 N. W. 49; Wilson v. Rustad, 75 N. W. 260.

WHITING, J. This case comes before this court on an appeal from the judgment of the circuit court in favor of the plaintiff and from an order denying a new trial. The record is brief, and the facts are practically undisputed. It appears that one Beddoe gave his promissory note to a bank, and that the plaintiff, Iverson, signed said note as a surety. At the time of giving said note Beddoe gave to Iverson a chattel mortgage to secure Iverson's liability as such surety. This mortgage covered crops to be grown in the season of 1904 on a certain quarter section of land in Minnehaha county. Said mortgage and note were dated March 19, 1904, and said mortgage was filed on March 19, 1904. At the time of giving said mortgage Beddoe had no lease on the land in question, and the said land was owned by a party by the name of Simpson; but upon April 4, 1904, Simpson by a written lease

leased this land to Beddoe.  It appears that Beddoe plowed the land
the 'fall before, but there is nothing to show that he plowed it un-
der any agreement for a lease.  The lease in question was in the
form that has been before this court several times, and which pro-
vided that the title and possession of all the crops grown thereon
should remain in the lessor until division; and further that, if the
lessee complied with all of the covenants on his part entered into
under said lease, then, upon request, the lessor would turn over
to him the two-thirds of the said grain grown under said lease,
such division to be upon the premises in question.  It further ap-
pears that Beddoe failed to pay his note to the bank, and that plain-
tiff, having paid the same, claimed the right to the possession of
the grain which would come to the mortgagor under said lease,
and, the defendant having purchased some of said grain, the plain-
tiff brought this action for conversion.  All of the above matters
appear undisputed.

Two questions are raised upon this appeal; one based upon the
issue as to whether or not there was ever a division of this grain
between the lessor and the lessee, and the other a pure question
of law as to whether or not this mortgage given by a party, who
at the time of giving the same neither owned or had a lease of the
land, and which mortgage purported to cover crops not yet in ex-
istence, had any legal validity, at least as against third parties.  The
appellant contends that there was no competent evidence showing
that these crops were ever divided, and further contends that until
such division no title to the same vested in the mortgagor, and un-
til title was vested in the mortgagor the mortgagee claiming under
such mortgagor was not in a position to bring this action of con-
version.  We will first consider the question as to whether or not
there was sufficient evidence to show a division of this grain, be-
cause, if there was, then the legal proposition contended for by
appellant is material in this case.  Certain evidence was received on
behalf of the respondent, over appellant's objection, touching the
question of division; this evidence being evidence relating to con-
versations between the lessor and the lessee wherein it is claimed
by the respondent that the lessor directed the lessee to make the di-
vision.  And it is further contended by the respondent that in ac-

cordance with such instructions a division was made at the threshing machine at the time the grain was threshed. Appellant strenuously contends that such conversations between the lessor and the lessee come under the rule which rejects hearsay testimony, claiming that such conversations are mere hearsay as regards the defendant herein; there being no evidence that the defendant or any of its representatives were present. 'We cannot agree with the contention of appellant. It certainly was incumbent upon the respondent, if appellant is right in his claim that there must have been a division, to prove such a division, and to prove, in case a division was made by the lessee, that it was authorized by the lessor, because, if unauthorized and unknown to the lessor, it probably would have been a nullity and not have passed title to the lessee. If the lessor had authorized some third person to be present at the threshing of this grain and make a division thereof for him, it surely would not be contended that such third person could not testify to the conversation from which he derived his authority and to his acts pursuant to such authority. We are fully satisfied that no reason can be given why the same rule should not apply when the lessee claims to have been authorized by the lessor. We are therefore satisfied that the court committed no error in admitting this testimony, which would tend to show that the lessor authorized the lessee to make the division. The lessee testified as follows: "The grain was divided right at the machine. It was divided by the bushel, so much in a box." It is therefore apparent that the jury had ample evidence upon which they could base a finding to the effect that a division of this grain was made at the threshing machine; it being authorized by the lessor and made in pursuance of such authority. Furthermore, it appears that the agent who purchased this grain knew there was a renter on this place, and such agent testified that the lessor had advised him that such renter had a share in the grain. It also appears that the agent, under the direction of the landowner, divided the purchase price of said grain between Simpson and Beddoe, giving to each of them a check.

Appellant also strenuously contends that this mortgage was invalid. The appellant not only cites numerous authorities showing that under the holdings in other states such a mortgage upon property not owned by the mortgagor at the time of the giving thereof, and not in existence at such time, would be invalid, but recognizing section 2024 of the Revised Civil Code, being section 4328 of the old Compiled Laws, claims that even under this section said mortgage is not valid, contending that while this section has been upheld in the case of Grand Forks National Bank v. Minneapolis & Northern Elevator Company, 6 Dak. 357, 43 N. W. 806, and also in several North Dakota cases, yet in none of these cases were the facts parallel to the case at bar, and therefore these cases are not authority to sustain this mortgage. Appellant claims that in all of these cases, both the territorial and the North Dakota, which cases were where chattel mortgages had been given upon crops not yet sown, the mortgagor at the time of executing such mortgage in each case was either the owner of the land or the lessee thereof. It is certainly true that the appellant is correct as to the facts in all of these cases, where the record discloses that particular point; and it is certainly true that none of these cases in the discussion thereof treat of the question of the validity of a mortgage where the property is not in existence and the source of potential existence is in no manner connected with the mortgagor at the time of the giving of the mortgage. This court is therefore confronted with this new question, the solution of which rests entirely upon the construction which this court shall place upon said section 2024. For a great many years the courts of different states, while holding a mortgage upon property not yet acquired by the mortgagor or upon property not yet in existence invalid at law, yet upheld such mortgages in equity, holding that the lien against the property was acquired whenever the mortgagor became the owner of the property, or when the property came into existence, provided that at the time the mortgage was given against the property not in existence the potential existence thereof was connected with the mortgagor as by showing, in the case of increase of stock attempted to be mortgaged, that the mortgagor owned the mother or mothers when the mortgage was given, or, in case of mortgage

of wool to be grown, that the mortgagor owned the sheep. Many other illustrations are found in the books showing facts sufficient to uphold a mortgage in equity upon the theory that the property had a potential existence. There has been a tendency in all states recognizing a chattel mortgage as a mere lien, to extend the law of mortgages so as to recognize as valid, for all purposes, both in law and equity, mortgages which formerly were upheld in equity only. And the courts of many states recognize the validity at law of a mortgage given upon property not then owned by the mortgagor, but which is in existence, and also recognize mortgages upon property not in existence where the mortgagor is the owner of the source from which this property must come, and this state in adopting section 2024 has recognized the trend of the courts and made this the established rule in this state.

Under the authorities in other states which recognize the present tendency to uphold such mortgages, we find many cases where mortgages are upheld upon property not yet acquired by the mortgagor, as upon live stock, such as horses, cattle, sheep, etc., and these same courts would uphold a mortgage given upon the offspring of cows, mares, and sheep, the mothers being owned by the mortgagor when the mortgage was given. We can see no reason why, if both of such classes of mortgages above referred to should be held good, a mortgage purporting to cover a mare not yet owned by the mortgagor, together with the increase thereof not yet born, should not be good, and we believe is was clearly the intent of our legislators in enacting section 2024 to cover such a case. The case at bar to our mind is exactly analogous. If a person owning a farm or having a lease thereof can, under this section, give a valid mortgage on crops to be grown thereon, and if another person not owning certain ground can give a mortgage thereon which will be valid and effective when he acquires title thereto, then we see no reason why this section of the statute will not cover a case such as the one at bar, where the mortgagor mortgaged property not in existence, the source of the potential existence being vested in another person, and such mortgage be good if he acquires the source of the potential existence and the property afterwards comes into actual existence, the same as if

he mortgages a·mare owned by another person including in said mortgage the unborn offspring.

We are therefore of the opinion that such mortgage was valid, and that there was no error in the rulings of the lower court upon the admission of testimony, and that the evidence was ample to sustain the verdict.

For these reasons the judgment appealed from, together with the order denying a new trial, are sustained.