(November 3, 1923.)

## THE BANK OF ROBERTS, a Corporation, Respondent, v. CHRIS OLAVESON, BERTHA OLAVESON, JAMES OLAVESON and JOAN OLAVESON, Defendants; MENAN MILLING COMPANY, LTD., a Corporation, and E. M. STAKER, Appellants.

[221 Pac. 560.]

CHATTEL MORTGAGES—ACTION TO FORECLOSE—PRIORITY—JOINDER OF CAUSES OF ACTION—MISJOINDER OF PARTIES—NOTICE—LANDLORD AND TENANT—CANCELATION OF LEASE—CONVERSION.

1. Under the provisions of C. S., sec. 6646, any person may be made a party defendant to an action who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein.

2. In an action to foreclose a chattel mortgage, it is always proper, and in most instances necessary, to make parties all who have or claim an interest in the property, as a buyer from the mortgagor.

3. In an action to foreclose a chattel mortgage the mortgagor and every other person having an interest in the mortgaged property should be made defendants so that their rights may be determined and that their claims and equities in the property may be cut off.

4. Where a chattel mortgage covered certain crops and the mortgagor sold the crop to a milling company which paid the proceeds thereof to the holder of a second chattel mortgage with notice thereof, and the same were applied thereon, it was proper, in an action to foreclose the first mortgage, to join therewith a cause of action in conversion against the milling company and the holder of the second mortgage.

5. Where a lessor permits a lessee to remain in possession of demised premises, to live thereon and to cultivate the premises after an agreement between them to cancel the existing lease, and the lessee gives a crop mortgage to a third person on crops to be grown on such premises, of which mortgage the lessor has notice, and the lessor thereafter leases the premises to the mortgagor under a new lease and takes a second chattel mortgage on the crops to secure payment of the rent, the lien of the first

mortgage is prior and the lessor, by his acts and conduct, is estopped to question the validity thereof.

6. Evidence *held* sufficient to establish fact that first lease had not been canceled prior to execution, delivery and recording of respondent's chattel mortgage.

APPEAL from the District Court of the Ninth Judicial District, for Jefferson County. Hon. James G. Gwinn, Judge.

Action to foreclose chattel mortgage. Judgment for plaintiff. *Affirmed.*

W. H. Holden and F. A. McCall, for Appellant E. M. Staker.

C. W. Poole, for Appellant Menan Milling Co., Ltd.

An action in conversion cannot be united with an action against a trustee. (*First Nat. Bank v. City National Bank of Wellington* (Okl.), 175 Pac. 253; *Benson v. Battey,* 70 Kan. 288, 3 Ann. Cas. 283, 78 Pac. 844; *Beal v. United Properties Co. of California,* 46 Cal. App. 287, 189 Pac. 346.)

An action upon a contract cannot be united with an action against a trustee. (*Bram v. Christopher,* 27 Cal. App. 741, 151 Pac. 172.)

An action upon a contract cannot be united with an action in conversion. (*Stark v. Wellman,* 96 Cal. 400, 31 Pac. 259; C. S., sec. 6688.)

Causes of action cannot be united unless they affect all the parties to the action. (C. S., sec. 6688; *Benson v. Battey, supra; Beane v. Givens,* 5 Ida. 754, 51 Pac. 987.)

In order to create a valid lien on crops to be grown, the mortgagor must, at the time the mortgage is given, have owned or had some interest in the lands on which the crops were grown. (5 R. C. L., sec. 32, pp. 407, 408; 11 C. J. 444; *Windham & Co. v. Stephenson,* 156 Ala. 341, 130 Am. St. 102, 47 So. 280, 19 L. R. A., N. S., 910; *McMaster v. Emerson,* 109 Iowa, 284, 80 N. W. 389; *Brown v. Bolt,*

116 Mich. 52, 74 N. W. 295; *Paden v. Bellinger,* 87 Ala. 575, 6 So. 351.)

The filing of the crop mortgage given by the Olavesons, to the plaintiff, imparted no notice to defendant Staker. (*Harris v. Reed,* 21 Ida. 364, 121 Pac. 780; *Mackey v. Cole,* 79 Wis. 426, 24 Am. St. 728, 48 N. W. 520; 5 R. C. L. 413; *Isbell v. Slette,* 52 Mont. 156, 155 Pac. 503.)

Otto E. McCutcheon and O. E. McCutcheon, for Respondent.

All persons who acquire interests in the property from the mortgagor are proper and usually necessary parties. (*Mittenthal v. Heigel* (Tex. Civ. App.), 31 S. W. 87; 7 Cyc. 97.)

"Persons who have wrongfully converted the mortgaged property to their own use are proper parties." (*McDaniel v. Chinski,* 23 Tex. Civ. App. 504, 57 S. W. 922.)

Any person having an interest in the mortgage, whether named as mortgagee or not, should be joined as a party in the foreclosure suit. (*Chapman v. Hunt,* 14 N. J. Eq. 149; 11 C. J. 722, sec. 540, 541; *Bollen v. Wilson Creek etc. Co.,* 90 Wash. 400, 156 Pac. 404; *German American Bank v. Seattle Grain Co.,* 89 Wash. 376, 154 Pac. 443; *Brown v. Gatewood* (Tex.), 150 S. W. 950; *Dungeness Logging Co. v. Oregon & W. Ry. Co.,* 65 Wash. 631, 118 Pac. 825; *Morrison v. Elzy,* 190 Ill. App. 374.)

The validity of respondent's mortgages is settled and sustained by our statute.     (C. S., sec. 6373.)

It is immaterial whether the mortgagor had at the time of giving the mortgage an interest in the land upon which such crops were to be grown, provided the land was properly described and the year in which the crops were to be grown was stated. (*Smith v. Lafayette & Bro.,* 29 Okl. 671, 119 Pac. 979; *Iverson v. Soo Elevator Co.,* 22 S. D. 638, 119 N. W. 1006.)

The same in Minnesota without the aid of a statute. (*Hogan v. Atlantic Elevator Co.,* 66 Minn. 344, 69 N. W. 1; *Ludlum v. Rothschild,* 41 Minn. 218, 43 N. W. 137.)

Staker had actual knowledge of plaintiff's mortgage. Actual notice is sufficient even without the aid of a record. (*Littel v. Brayton etc. Co.*, 70 Colo. 286, 201 Pac. 34.)

BUDGE, C. J.—This action is one to foreclose a chattel mortgage. The facts as they appear from the record, are as follows: On November 24, 1916, E. M. Staker, by instrument in writing, leased certain premises owned by him to C. C. Olaveson for a term of five years at agreed annual cash rentals as stipulated therein. The lease provided that the lessee should, on the first day of April of each year, make, execute and deliver to the lessor a note and chattel mortgage upon the crops to be grown on the demised premises to secure the payment of the rent for that year. This lease was never recorded. In 1918, on account of the premises being flooded by high water, no crops were raised. An oral agreement was made at this time between Olaveson and Staker that the lease then existing should be canceled and that later a new lease should be made. Olaveson resided upon the premises during the years 1918 and 1919 and in the fall of 1918 plowed up part of the land. On January 14, 1919, Chris Olaveson and his wife, and James Olaveson and Joan Olaveson, his wife, made, executed and delivered to the Bank of Roberts their note for $1,185, which was secured by a mortgage on certain personal property and also upon all of the crops to be grown upon the Staker farm in that year. All of the proceeds of this loan, with the exception of $191.25, which was deposited to the checking account of C. C. Olaveson, was used to take up certain obligations of the Olavesons then owing to the bank. The chattel mortgage was filed for record on January 21, 1919. On March 13, 1919, a new lease in writing was entered into between C. C. Olaveson and E. M. Staker, covering the same premises and having the same proviso as the former lease as to the giving of a chattel mortgage on the crop to be grown on the premises to secure the payment of rent for each year but increasing the rental and giving the lessor the privilege of selling the premises. This lease was

never recorded, but in accordance with its terms, on March 13, 1919, the same day the lease was executed, Olaveson made, executed and delivered his note for $1,200 in favor of Staker and also a chattel mortgage upon the crops to be grown upon the premises in 1919 to secure the payment of the rent for that year, which mortgage was duly filed for record on March 14, 1919. The wheat raised upon the premises was sold to Menan Milling Co., Ltd., for the sum of $1,087, payment therefor being made to Olaveson and Staker jointly on September 18, 1919. One thousand dollars of this amount was applied upon the note given to secure the rent and $87 upon a bill for groceries contracted by Olaveson at Staker's store. Subsequently this action was commenced by respondent to foreclose its chattel mortgage, to have the same declared superior to the chattel mortgage given to Staker and to recover from Staker and the Menan Milling Company, Ltd., the proceeds of the wheat sold as aforesaid. The four Olavesons were made parties to the action and upon their failure to appear and answer their default was duly entered. The appellants, Menan Milling Co., Ltd., and E. M. Staker, appeared by demurrer which was sustained. The complaint being amended they thereupon answered, the former denying its liability and the latter asserting the superiority of his mortgage over that of respondent. Upon the issues thus framed the cause was tried to the court and a jury. At the close of all of the testimony a motion for judgment was made by respondent, which the court granted and thereupon discharged the jury. Thereupon findings of fact and conclusions of law were made by the trial court and judgment entered in favor of respondent, declaring its mortgage superior to that of appellant, Staker, decreeing its foreclosure and ordering sale of the remaining mortgaged chattels. The decree also provided that, if upon such sale the proceeds were insufficient to satisfy the judgment, respondent should have execution against Menan Milling Co., Ltd., and E. M. Staker for the amount remaining due, not to exceed $1,087, with

interest from September 18, 1919. From this judgment this appeal is taken.

Appellants specify sixteen assignments of error. The first attacks the action of the court in overruling the demurrer to the amended complaint, contending that inconsistent causes of action are improperly united; that the causes of action so joined do not affect all the parties to the action and that there is a misjoinder of parties defendant. C. S., sec. 6646, provides as follows:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein . . . . "

C. S., sec. 6657, makes it the mandatory duty of the trial court to bring in all parties to a controversy to the end that there may be a full determination of the matters involved when this can be done without prejudice to the rights of others or by saving their rights.

Under the provisions of the foregoing statutes the defendants were both necessary and proper parties to a complete determination or settlement of the questions involved in this action. The rule in this regard is laid down in 11 Corpus Juris, 722, in the following language:

"The general rule in regard to parties defendant is that all persons against whom the mortgagee seeks judgment are necessary parties to an action to foreclose. Every person who claims a part of the property in his own right and holds possession thereof is properly joined as defendant."

As far as appellant Menan Milling Co., Ltd., the purchaser of the wheat in question, is concerned, in the case of *Bollen v. Wilson Creek Union Grain & Trading Co.,* 90 Wash. 400, 156 Pac. 404, an action to foreclose a crop mortgage, where part of the crop was sold to a milling company by the mortgagor, the court held that: "In an action to foreclose a chattel mortgage, it is always proper and in most instances necessary, to make parties all who have or claim, an interest in the property, as a buyer from the mortgagor," the court saying:

"If we treat the action as one of foreclosure, appellant has done no more than bring in a party who, theoretically, at least, has possession of the property, and has the burden of accounting for it. It is always proper, and in most instances necessary, in a foreclosure proceeding, to make all who have, or claim, an interest in the property parties, that their rights, as against the mortgagee, may be determined. 27 Cyc. 1562; *Safe Deposit Co. v. Electric Light Co.*, 12 Wash. 138, 40 Pac. 732. One who has put the mortgaged property beyond the reach of the mortgagee cannot complain that the mortgagee does not proceed against the property, or sue in trover. By his voluntary act he has substituted his implied promise to pay such damages as the mortgagee may sustain, and is in no position to determine for the mortgagee his choice of remedies."

Also, in Jones on Chattel Mortgages (fifth ed.), sec. 783, it is said:

"A purchaser of the mortgaged property, or of any part of it, from the mortgagor, should be made a party defendant with the latter. Such purchaser may be held responsible, not only for the mortgaged goods then in his possession, but also for such as he may have sold before the filing of the bill, although the mortgagee might maintain an action at law for the conversion of such property."

To the same effect, see: *McDaniel v. Chinski*, 23 Tex. Civ. App. 504, 57 S. W. 922; *Brown v. Gatewood* (Tex.), 150 S. W. 950. It is apparent from the foregoing that the Menan Milling Co., Ltd., was properly joined as a party defendant.

Concerning the joinder of E. M. Staker, the holder of a chattel mortgage upon the same property, the rule is laid down in Jones on Chattel Mortgages (fifth ed.), sec. 783, where it is said:

"The mortgagor and every other person having an interest in the mortgaged property should be made defendants to the bill, so that their claims and equities in the property may be cut off. . . . . An allegation that a defendant has or claims to have some interest in the mortgaged

property is sufficient to show that such defendant is a proper party to the action and such a complaint justifies a judgment cutting off all of his rights subordinate to the mortgage.''

It therefore follows that Staker was properly joined as a party defendant.

Appellants next contend that several causes of action are improperly united. The complaint alleges the sale of the wheat to Menan Milling Co., Ltd., by the Olavesons and that Staker received the proceeds thereof. This action is one in equity, which being true, in order to settle the entire controversy and avoid a multiplicity of suits it was proper for the plaintiff to set out his cause of action against all of the defendants who claimed an interest in the property mortgaged or who had converted it to their own use.

In the case of *Morrison v. Elzy,* 190 Ill. App. 374, an action to foreclose a mortgage, the mortgagee brought an action at law, but when the case was opened the court transferred it to the equity side and directed the plaintiff to bring in new parties. In the equity suit all parties having any connection with the matter were brought in. The defendants or some of them had sold the property and converted the money, and the money produced by the sale of the mortgaged property having been traced to the First National Bank, the court held that the bank must be regarded as a trustee for the benefit of the plaintiff.

In the instant case the Olavesons sold the wheat covered by the chattel mortgage to Menan Milling Co., Ltd., which company made its trade acceptance in favor of Olaveson and Staker, the latter ultimately receiving the money therefor. It was through the act of the Menan Milling Co., Ltd., and Staker combined that the wheat was converted. It was through their joint act, Staker claiming the money, the proceeds of the wheat, under an alleged prior mortgage. Menan Milling Co., Ltd., claimed a right to purchase the wheat by reason of Staker's alleged prior lien. There was therefore no misjoinder of causes of action.

Coming now to the serious question involved, namely, the priority of the chattel mortgages, if appellant Staker's lien under his chattel mortgage is superior to the respondent's it must be upon the theory that the Olavesons had no interest in the land when the chattel mortgage was given to the respondent bank, and, having no interest in the land when the chattel mortgage was given, no valid lien could be created against crops to be grown thereon. It will be conceded that authorities may be found supporting this contention. If a chattel mortgage may be given upon crops to be afterward sown or caused to be sown and the crops be thereafter sown, a previous chattel mortgage covering such crops would be valid and enforceable under the provisions of C. S., sec. 6373. However, this question becomes unimportant, since respondent's mortgage was given in January, 1919, Staker's mortgage was given in March, 1919, and the crops were not sown until April, 1919.

We are therefore confronted with the question of the priority of respondent's chattel mortgage, which depends upon Olaveson's right to possession or interest in the land upon which the crop was grown. It is Staker's contention that Olaveson had no lease at the time that he gave the chattel mortgage to respondent, or no interest in the land upon which the crops were subsequently grown. It is conceded that a valid lease as between the parties was entered into in 1916 for a period of five years; that the Olavesons carried out the terms of the lease up to the year 1917; that the land was flooded during the year 1918; that practically no crop was raised in that year; that Staker and the Olavesons met and that Staker did not insist upon the rent being paid for that year and that a conversation was had to the effect that the former lease should be canceled and a new lease entered into containing additional provisions, namely, for an increase in rental and a right to sell the premises during the life of the lease between certain times of the year. The Olavesons went right on operating the place, continued to reside upon it, plowed up considerable land, putting the same in a condition for future crops. A care-

ful reading of the record discloses that there is no evidence as to just when the old lease should be canceled and the new lease become effective except the date given in the new lease, March 13, 1919. Olaveson testified in substance that they decided that he would plow the land after he had mowed it, that they would cancel that lease, that he was not to pay any rent that year, and they would fix up a new lease for the following years and go on. He stated: "We just decided that I would go ahead and plow the ground, put it in shape for another year and cancel that old lease." The old lease was in Olaveson's possession on the 14th day of January, 1919, when he gave the chattel mortgage to respondent. Under the terms of that lease his right to the possession of the land would not terminate for a period of approximately three years. Olaveson further testified that he thought the old lease was in effect up to the time when he got the new lease. The respondent knew nothing of the cancelation of the old lease or the giving of the new lease, neither of the leases being filed for record. In the case of *Smith v. Lafayette,* 26 Okl. 671, 119 Pac. 979, 980, it is held that it was immaterial, so far as the validity of the mortgage was concerned, whether the mortgagor had or had not at the time of giving the mortgage an interest in the land upon which such crops were to be grown, provided the land was properly described and the year in which the crops were to be grown was stated, and the crops were thereafter grown on the premises by the mortgagor.

In the case of *Iverson v. Soo Elevator Co.,* 22 S. D. 638, 119 N. W. 1006, it was held that where a mortgage was given on crops to be grown, the instrument containing a good description of the land and a statement of the year in which the crops were to be grown, it was a good mortgage if the mortgagor did in fact afterward get the land and raise a crop thereon, although he had no interest in the land at the time of giving the mortgage. To the same effect see *Ludlum v. Rothchild,* 41 Minn. 218, 43 N. W. 137.

The trial court upheld the contention of the respondent upon the theory, no doubt, that the Olavesons had an interest in the land and that the lease had not been actually canceled but at most there was an agreement to cancel. While the evidence is slight to support this finding, we think that there is sufficient competent evidence to justify it, when considered in connection with the further fact that Staker, by his acts and conduct, clothed the Olavesons with all indicia of ownership and right to possession and had constructive, if not actual notice, of the existence of the respondent's chattel mortgage, which was of record at the time he entered into the second lease with the Olavesons, at which time he knew of their obligation to the respondent and that the same had been secured by chattel mortgage. It was then within his power to refuse to execute the second lease but he did not do so, neither did he record the second lease, or give respondent notice of the same, but waited until the crop was harvested and delivered to the Menan Milling Co., Ltd., when he made his claim for the proceeds of the sale of the wheat. That company also had notice of the fact that the respondent had a chattel mortgage on this crop, but notwithstanding paid the proceeds of the wheat to Staker, believing his lien to be prior in time. Where one of two innocent parties must suffer, he through whose agency the loss occurred must bear it.

We have therefore reached the conclusion that the judgment of the trial court should be sustained, and it is so ordered. Costs are awarded to respondent.

McCarthy, Dunn and Wm. E. Lee, JJ., concur.