[No. 20281.   Department One.   July 29, 1927.]

COMMUNITY STATE BANK, *Appellant*, v. JACOB MARTIN
et al., *Respondents.*[1]

[1] CHATTEL MORTGAGES (3, 13)—PROPERTY SUBJECT — CROPS — DE-
SCRIPTION OF PROPERTY. A chattel mortgage upon "crops" to be
produced during the year upon lands accurately described, gives
a sufficient description of the property mortgaged, although
there is no description of the crops to be raised.

[2] SAME (3)—CROPS TO BE GROWN—VALIDITY OF INSTRUMENT—TITLE
OF MORTGAGOR. A chattel mortgage upon crops to be produced
during the year upon lands accurately described, is valid, al-
though the mortgagor, at the time of its execution, had no in-
terest in the land, providing he thereafter acquired an interest
in the land.

[3] SAME (3, 40)—PRIORITY BETWEEN MORTGAGE AND OTHER LIENS.
A chattel mortgage upon crops to be raised upon certain lands
in which the mortgagor had no interest at the time the mort-
gage was given, attaches only to such interest as the mortgagor
afterwards acquired, and is therefore inferior to the rights of
the owner of the land thereafter leasing the land to the mort-
gagor by a lease expressly reserving a lien upon the lessee's
share of the crops as security for any advances made to the
lessee.

[4] TROVER AND CONVERSION (18)—ACTIONS—TIME TO SUE AND LIMIT-
ATIONS. Where a conversion, if any, of mortgaged chattels, took
place prior to the expiration of limitations against enforcement
of the mortgage, the cause of action for conversion was com-
plete at the time it took place, and was not affected by the
subsequent running of limitations against the mortgage.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered November 21,
1925, in favor of the defendants, upon sustaining a
challenge to the sufficiency of the evidence, in an action
to foreclose a chattel mortgage. Reversed.

*Grady & Velikanje,* for appellant.

*Richards, Gilbert & Conklin,* for respondent Utah-
Idaho Sugar Co.

[1]Reported in 258 Pac. 498.

MAIN, J.—As to the defendants Jacob Martin and wife, this action was brought to foreclose a chattel mortgage. As to the other defendants, damages were sought because they had purchased certain property claimed to have been covered by the mortgage and had failed to account to the plaintiff for the purchase price. At the conclusion of the plaintiff's evidence, the defendants, other than Martin and wife, challenged the sufficiency thereof and moved for a dismissal. This motion was granted. Judgment was entered against Martin and wife for the sum of $772.44 together with interest thereon, which was the balance due upon the note secured by the mortgage, and the plaintiff appeals from the judgment of dismissal. Only the respondent Utah-Idaho Sugar Company, a corporation, appears in this court.

On January 13, 1923, Jacob Martin gave a chattel mortgage to the appellant which specifically covered certain horses, farm machinery, etc. The mortgage then provided:

"Also the following described crops now growing and to be grown and harvested in the season of 1923 upon the following described real estate in Yakima county, state of Washington, which is now leased by the party of the first part, to-wit: The Southwest quarter of the Southeast quarter and the Northeast quarter of the Southwest quarter of Section five and the Northwest quarter of the S.E. quarter of Section Five, all in Township nine, North, Range twenty two E. W. M. containing eighty seven acres more or less."

At this time Martin had no lease for the land for the year 1923, but on March 9, 1923, the respondent leased to him the property described in the chattel mortgage, together with other property, for that year. During the season covered by the mortgage, Martin raised beets, potatoes, hay and straw and, as stated, the pur-

chasers thereof, of which the respondent was one, did not account to the appellant for the purchase price.

[1]   The first question is whether the description of the crops to be grown during the season of 1923 was sufficient.   The rule is, in such cases, that the mortgage must point out the subject-matter covered thereby, so that the purchasers thereof may be able to identify the property intended to be covered together with such inquiry as the instrument suggests.   In *Stickney v. Dunaway & Lambert,* 169 Ala. 464, 53 South. 770, it is said:

"In order to impute to a purchaser of a mortgaged chattel notice that such chattel is subject to the lien of the mortgage, it is not essential that the chattel bought should answer, with entire exactness, to the whole description written in the recorded instrument.   As between mortgagees and purchasers, the rule, as stated by Judge Freeman in *Barrett v. Fisch* (Iowa) 14 Am. St. Rep., at page 242, is: 'The mortgage . . . must point out the subject-matter of it, so that such persons [purchasers] by it, together with such inquiries as the instrument suggests, may be able to identify the property intended to be covered.' "

The cases of *Mott v. Johnson,* 112 Wash. 18, 191 Pac. 844; *Farmers and Merchants Bank v. Small,* 131 Wash. 197, 229 Pac. 531; *Collerd v. Tully,* 77 N. J. Eq. 439, 77 Atl. 1079, and *Williamson v. Payne,* 103 Va. 551, 49 S. E. 660, are to the same effect regarding the statement of the rule.   The description of the property as contained in the mortgage is sufficient, if it directs an inquiring mind to evidence where the precise thing mortgaged may be ascertained.   In *Armsby v. Nolan,* 69 Iowa 130, 28 N. W. 569, it is said:

"The description of the property as contained in the mortgage must direct the mind to evidence whereby the precise thing conveyed may be ascertained, and if thereby absolute certainty may be attained, the instrument is valid; otherwise it is void as to the third parties for uncertainty."

There are innumerable cases upon the question of the sufficiency of the description of property in chattel mortgages some, of course, holding the description sufficient and others to the contrary. Each case must be determined largely from its particular facts. In other words, the question is, do the particular facts of a given case bring it within the rule stated about which there is little, if any, controversy. In the present case the mortgage specifies the year and describes accurately the land on which the crops were to be produced. It purports to cover crops grown during that year upon the land described. It was sufficient to suggest an inquiry as to the crops, and by such inquiry, if pursued, the crops covered by the mortgage could have been ascertained with certainty. It is true that, in the printed portion of the mortgage, the words, "following described," are used and the crops to be produced are not particularly described as this language would indicate. It does not appear to us, however, that these words should be given the effect of destroying the sufficiency of the description which otherwise would satisfy the governing rule in such cases. It is our view that the mortgage was not invalid because of the insufficiency of the description.

[2] The next question is, whether the mortgage is invalid because, at the time it was executed, the mortgagor had no interest in the land on which the crops were to be grown, the mortgage having been executed prior to the time of the making of the lease. In this state, the right to mortgage crops before they shall have been sown or planted is authorized, provided that the making of such a mortgage for more than one year in advance of the seeding or planting is forbidden. Rem. Comp. Stat., § 3779 [P. C. § 9759]. That statute does not cover the question presented. It only recognizes and authorizes the right to mortgage crops sown

within the limits specified. Upon the precise question there are not many adjudicated cases, so far as we are informed. In *Hogan v. Atlantic Elevator Co.*, 66 Minn. 344, 69 N. W. 1, it was held that a chattel mortgage of property not then owned, but to be thereafter acquired, was valid. It was there said:

"The further point is made that there was no evidence that at the time the mortgage was executed the mortgagor was in possession of or had any interest in, the land on which this grain was raised, and, hence, that the grain had not even a potential existence, and was incapable of being the subject of a mortgage. This is fully disposed of by the case of *Ludlum v. Rothschild*, 41 Minn. 218, 43 N. W. 137, in which this court went entirely beyond the doctrine of 'potential existence,' and adopted the rule in equity, holding that where parties, by their contract, in clear terms express an intention to create a mortgage lien upon personal property, not then owned, but to be subsequently acquired, by the mortgagor, whether then in being or not, the mortgage attaches as a lien on the property as soon as the mortgagor acquires it."

In *Ludlum v. Rothschild*, 41 Minn. 218, 43 N. W. 137, the same court said:

"We are of the opinion that, except in cases prohibited by statute, (see Gen. Laws 1887, c. 176,) whenever the parties by their contract in clear terms express an intention to create a positive lien upon personal property not then owned, but to be subsequently acquired, by the mortgagor, whether then *in esse* or not, the mortgage attaches as a lien on the property as soon as the mortgagor acquires it, as against the mortgagor and all claiming under him, either by voluntary transfer or with notice, precisely as if the property had been in being and belonged to the mortgagor when the mortgage was executed."

In *Richardson v. Washington*, 88 Tex. 339, 31 S. W. 614, the supreme court of Texas supports the same doctrine. It was there said:

"It is well established that a mortgage of the personal and real property of a railway to be hereafter acquired, that a mortgage of crops to be raised during a series of years to secure rents, that a mortgage of the earnings of a ship on future voyages to secure advances, are all valid in equity, though not at law. *Pennock v. Coe*, 23 How. 121; *Railroad Co. v. Woelpper*, 64 Pa. St. 372; *Butt v. Ellett*, 19 Wall. 546; *Everman v. Robb*, 52 Miss. 657; *Sillers v. Lester*, 48 Miss. 523; *In re The Warre*, 8 Price, 269; *Fletcher v. Auber*, 1 Jac. & W. 526; *Douglas v. Russell*, 4 Sim. 524. Applying the principles above discussed to the case at bar, we are of the opinion that the parties to the contract at the time of its execution contemplated that the very crop raised on the 100 acres of land therein described, during the year 1893, should be brought into existence, and intended that it should become subject to the lien of said contract, and therefore said agreement, in equity, attached to and became a lien upon the same."

The supreme court of Alabama takes the opposite view and adheres to the doctrine that a chattel mortgage is invalid, unless the thing covered thereby at the time of making the mortgage had at least a potential existence. *Paden v. Bellinger*, 87 Ala. 575, 6 South. 351; *Windham & Co. v. Stephenson & Alexander*, 156 Ala. 341, 47 South. 280, 130 Am. St. 102, 19 L. R. A. (N. S.) 910. The case of *Page v. Larrowe*, 22 N. Y. Supp. 1099, supports the Alabama view.

The North Carolina cases, *Weil v. Flowers*, 109 N. C. 212, 13 S. E. 761, and *Crinkley v. Egerton*, 113 N. C. 142, 18 S. E. 341, go off on the question of the insufficiency of the description and therefore cannot be said to support either rule.

In the case of *Reeves & Co. v. Sheets*, 16 Okl. 342, 82 Pac. 487, it was held that a mortgage upon crops to be grown in the future was not valid, where the mortgagor, at the time, did not own the land and did not afterwards acquire any interest therein. It thus appears that that case is not in point.

In the case of *Iverson v. Soo Elevator Co.*, 22 S. D. 638, 119 N. W. 1006, the court sustained the right to mortgage crops where the mortgagor, at the time, did not have an interest in the land, but afterwards acquired the same, by reason of a statute of that state which authorized the creation of a lien upon property not then owned but subsequently acquiring an interest therein. The case, so far as it has any bearing, tends to support the view of the supreme courts of Minnesota and Texas above set out.

It seems to us that the better rule is that a mortgage may be made upon crops when the mortgagor at the time does not have an interest in the land, providing he thereafter acquires an interest. It is difficult to see in what way this would operate unjustly, if the mortgage is otherwise sufficient.

[3] This brings us to the question as to which is prior in right, the Utah-Idaho Sugar Company under its lease or the appellant under its mortgage. The lease provides that the "lessor shall have a lien upon the lessee's share of said crops to secure it for any advances in money or supplies it may make to the lessee . . . " and was filed for record on April 14, 1923, approximately two weeks after its execution. The appellant having taken a mortgage on the property which was not owned at the time by the mortgagor and which was not in existence, the mortgage only attaches to such interest as the mortgagor subsequently acquired. In *United States v. New Orleans Railroad*, 79 U. S. 362, it is said:

"A mortgage intended to cover after-acquired property can only attach itself to such property in the condition in which it comes into the mortgagor's hands. If that property is already subject to mortgages or other liens, the general mortgage does not displace them, though they may be junior to it in point of time. It only attaches to such interest as the mortgagor ac-

quires; and if he purchase property and give a mort-
gage for the purchase-money the deed which he re-
ceives and the mortgage which he gives are regarded
as one transaction, and no general lien impending over
him, whether in the shape of a general mortgage, or
judgment, or recognizance, can displace such mortgage
for purchase-money. And in such cases a failure to
register the mortgage for purchase-money makes no
difference. It does not come within the reason of the
registry laws. These laws are intended for the pro-
tection of subsequent, not prior, purchasers and credi-
tors.''

In *Ivy v. Pugh*, 161 S. W. (Tex. Civ. App.) 939, it
is said:'

''Appellee's mortgage lien became effective upon the
planting and growing by defendant Pugh of the crop
embraced in its terms, but it was effective only to the
extent of the interest owned by said Pugh in the crops.
Pugh could convey no greater title than he had, which,
under the operation of our landlord's lien act (Revised
Statutes 1911, art. 5475), was one subject to the lien
of the landlord for rents. In other words, he never ac-
quired an absolute title to the property previously
mortgaged, but only a qualified title. So that the mort-
gage in the very nature of things could only operate
upon the limited ownership of the mortgagor.''

Applying the rule of those cases, the right under the
lease was superior. The appellant was not a subse-
quent encumbrancer within the meaning of Rem. Comp.
Stat., § 3780 [P. C. § 9747].

[4] The next question is, whether the appellant's
mortgage had expired by limitation. Section 3782 of
the code provides, in part, that a chattel mortgage shall
cease to be notice unless, before the expiration of two
years after the time such mortgage becomes due, an
affidavit is filed setting forth the amount due upon the
mortgage. The appellant's mortgage was three days
over the statutory limit at the time of the trial of the
cause, but this is not controlling as the sugar company

had purchased the crops from Martin prior to the expiration of the two year period. The cause of action for conversion, if any had existed, would be complete at the time the alleged conversion took place.

Since the case was dismissed at the conclusion of the plaintiff's testimony, it cannot be determined from this record whether the crops received by the sugar company equaled or exceeded in value the amount of money which had been advanced.

The judgment will be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

MACKINTOSH, C. J., MITCHELL, FRENCH, and FULLERTON, JJ., concur.