HENRY O'CONNOR *vs.* WILLIAM MEEHAN, and Garnishee, and Claimant.

October 21, 1891.

Assignment of Wages to be Earned.—An assignment of wages to be earned in the future under an existing employment, if made in good faith and for a valuable consideration, is valid, even although the employment is for no definite period, and may be terminated at any time by either party; and such an assignment may be made as security for either present indebtedness or future advances.

Same—Fraud on Creditors.—But *held*, that the evidence in this case justified a finding that the assignment was a device of the assignor to defraud his creditors, and that the assignee had notice of that fact.

In this action, brought in a justice's court in St. Paul, the Northern Pacific Railroad Company was summoned as garnishee, and upon the disclosure it appeared that defendant was a switchman in the service of the company, and that at the date of the service of the garnishment summons there was due on account of wages $136.20, of which he claimed $20 as exempt, and that prior to such service, defendant had, on July 25, 1890, assigned $85.36 of this amount to one William Evans, and on September 10, 1890, the balance of it to other persons. Evans appeared as claimant, and filed a complaint alleging the assignment, to which the plaintiff answered alleging the

assignment to be fraudulent as to creditors.    Judgment was rendered
for plaintiff against the garnishee for $85.36.   The claimant appealed,
on questions of law and fact, to the municipal court of St. Paul, where
the action was tried by the court, and judgment ordered for plaintiff
against the claimant for $85.36, the amount of defendant's wages
for August, 1890, the assignment being held void.   A new trial was
refused, and the claimant appealed.

   *B. H. Schriber*, for appellant.

   *John H. Ives*, for respondent.

   MITCHELL, J.   An assignment of wages to be earned up to a cer-
tain date in the future, under an existing employment, if made in
good faith and for a valuable consideration, is undoubtedly valid.   If
there be a subsisting engagement of employment, such an assign-
ment will be valid, although the employment is for no definite period
and may be terminated at any time by either party.   It may be
made as security, not only for present indebtedness, but also for fu-
ture advances to be made to the assignor.   If, however, it is a mere
device to cover up the wages from the creditors of the assignor, it is,
as to them, fraudulent and void.

   The only question in this case is, to which of these classes does
this assignment belong?   This is purely a question of fact, to be
determined from the evidence.   The mere fact that it may have had
the effect of hindering the plaintiff or other creditors of the defendant
in collecting their claims is not, of itself, sufficient to render the as-
signment void, in the absence of a fraudulent intent.   Every assign-
ment of property by an insolvent or embarrassed debtor, however
lawful and honest, has in one sense the effect of hindering the cred-
itors not provided for.   To render the assignment fraudulent it must
appear that it was a device entered into for the purpose of covering
up the money, and putting it beyond the reach of creditors.   A
workman whose wages are payable monthly, or at other stated
periods, may not have accumulated enough to support himself or
family until pay-day, and it may therefore be an actual necessity
for him to assign his future earnings for a given time as security
for advances until pay-day arrives; and there is no law, civil or
moral, prohibiting him from doing so for that or any other honest

purpose. But, on the other hand, it is a matter of common knowledge that there is a class of men who make a regular practice of "selling their time," or assigning their wages monthly in advance, for the very purpose of putting them beyond the reach of garnishee process; the assignee in such cases often obtaining large compensation for acting as a "fence" in the matter, in the form of usury or exorbitant interest for "advances." In this case there is evidence reasonably tending to show that the defendant assignor was insolvent, and in debt to different parties, who had on several occasions unsuccessfully attempted to garnish his wages, and that the claimant assignee had notice of these facts. It also appears that the defendant had been in the regular habit of monthly "selling his time," or assigning his wages a month in advance. He had made such assignments regularly for several successive months to the claimant, who advanced him, from time to time during the following month sums of money, usually about equal to the wages earned up to the dates of such advances. No attempt was made to show the purpose or object of defendant's "selling his time," or that there was anything in the circumstances of himself or family, if he had one, requiring him to obtain advances on his future earnings. Neither does it appear what the agreement was as to the times or amounts of advances which the claimant was to make to the defendant, or, indeed, that he agreed to advance any particular amount, on the security of these assignments. There is also evidence from which the court might well have found that the claimant knew, before he took the assignment for the August wages, that defendant was "pretty slippery" or "pretty tough" in the matter of paying his debts, and that these successive assignments were being used to stand off his creditors. We think the evidence justified the court in finding that the assignment was a device of the defendant to defraud creditors, and that the claimant had notice of that fact. If this was so, the fact that the claimant advanced defendant money on it is not material.

Order affirmed.