## J. M. LEITCH v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

May 26, 1905.

Nos. 14,281—(66).

**Assignment of Future Wages.**

An assignment of wages to be earned in the future under an existing contract of employment, to secure a present debt or future advances, is valid as an agreement, and takes effect as an assignment as the wages are earned, but an assignment of wages to be earned, without limit as to amount or time, is void.

**Discharge in Bankruptcy.**

Such an assignment cannot be enforced against a debtor, after his discharge in bankruptcy, as to wages thereafter earned by him.

Action in the municipal court of St. Paul to recover $45.75 unpaid wages earned by one Ayers while in the employ of defendant, which plaintiff alleged had been assigned to him. The case was tried before Hine, J., who found in favor of plaintiff. From a judgment entered pursuant to the order, defendant appealed. Reversed and judgment ordered for defendant.

*L. T. Chamberlain* and *H. L. Donahower,* for appellant.

*William W. Fry,* for respondent.

START, C. J.

This is an appeal by the defendant from a judgment of the municipal court of the city of St. Paul. There is no dispute as to the facts upon which judgment is based. They are substantially these:

On February 4, 1903, O. G. Ayers, who was then in the employment of the defendant, hereafter referred to as the "debtor," borrow-

[1] Reported in 103 N. W. 704.

ed of the plaintiff $40, and gave his promissory note therefor to the plaintiff, and at the same time executed to the plaintiff a writing, the here material provisions of which are as follows, namely:

> For a valuable consideration, the receipt of which is hereby acknowledged, I do hereby transfer, assign, set over to J. M. Leitch, all wages and claim for wages, or any moneys due, or to become due me from my respective employer, viz., Northern Pacific Railway Company, or any other company, firm or corporation, person or persons, I may now, or may hereafter be employed by, until my indebtedness to J. M. Leitch has been paid in full. I do hereby constitute and appoint the said J. M. Leitch my attorney, in my name to take all legal measures which may be necessary for the complete recovery and enjoyment of the claim hereby assigned, and I hereby authorize and empower, and direct the Northern Pacific Railway Co., or any other company, firm, corporation, person or persons I may now or hereafter be employed by, to pay the said demand and claim for wages, or moneys due me to the said J. M. Leitch and hereby authorize and empower him to execute such receipts as may be required. And also to endorse for me my name to my checks or warrants which may be issued to me for such salary or moneys due me and receipt for same in my name.

The defendant was notified of the execution of this instrument on February 29, 1904, and a copy thereof was filed with it. The debtor continued in the employment until April 26, 1904, when he quit. The record does not disclose the terms of his employment, but it may be inferred that it was under one contract. He was fully paid for all of his services rendered prior to the month of February, 1904, before March 1 following. Sufficient wages, however, were earned by the debtor between the date of the filing of the copy of the instrument with the defendant on February 29, 1904, and the time he quit work, to satisfy the plaintiff's claim. On June 3, 1903, the debtor filed his petition in bankruptcy, with a complete schedule of his debts and liabilities, including the debt to the plaintiff, as evidenced by the promissory note which the plaintiff is attempting to collect by this action to recover from the defendant $45.75 due to the debtor for wages,

In November the debtor was duly discharged in bankruptcy from all of his debts existing at the time of his filing his petition not specifically exempted from the operation of the bankruptcy act. Upon these facts the trial court directed judgment for the plaintiff for the amount claimed.

The only question for our decision is whether such facts justify the decision of the trial court. A solution of this question depends upon the effect of the debtor's discharge in bankruptcy upon the alleged assignment of his wages. Did it release him from the liability of having his wages, earned after his discharge, collected by the plaintiff by virtue of the assignment and applied to the payment of his debt? If the plaintiff had a valid lien at the time of the debtor's discharge upon his wages thereafter to be earned as security for the payment of his debt, then the discharge would not affect such vested security. This conclusion follows from the admitted proposition that a discharge in bankruptcy only relieves the debtor from all legal obligation to pay the debt, and from all liability of having his future-acquired property and earnings seized to pay the debt; but all valid and existing liens on specific property or trusts therein securing the debt are not impaired by the discharge. Evans v. Staalle, 88 Minn. 253, 92 N. W. 951.

The case cited was one where the creditor at the time the bankruptcy proceedings were initiated had the vested right to enforce a trust in certain land the legal title to which was held by a third party for the payment of his debt against the bankrupt. It was held that the right to enforce the trust was not affected by the debtor's discharge. The decision, however, is not relevant to the question whether the plaintiff herein had a valid lien at the time of his debtor's discharge upon his wages thereafter to be earned.

In the case of Wenham v. Mallin, 103 Ill. App. 609, relied upon by the plaintiff, it does not appear whether the wages which it was sought to subject to the payment of a debt from which the debtor had been discharged in bankruptcy were earned after such discharge. The decision in that case is based upon the admitted proposition that valid liens on property are not affected by a discharge in bankruptcy, and the statement that the creditor had a vested property right in the wages of his debtor to secure the payment of his debt which was not affected by a discharge in bankruptcy. The case is not strictly in point.

The plaintiff also relies upon the decisions of this court sustaining the validity of chattel mortgages on crops to be grown or on property to be acquired. Minnesota Linseed Oil Co. v. Maginnis, 32 Minn. 193, 20 N. W. 85; Miller v. McCormick Harvesting M. Co., 35 Minn. 399, 29 N. W. 52; Ludlum v. Rothschild, 41 Minn. 218, 43 N. W. 137; Hogan v. Atlantic Ele. Co., 66 Minn. 344, 69 N. W. 1. Apparently the cases are in point, but not in fact. There is a fundamental distinction between a mortgage on specific crops to be sown or definitely described chattels to be acquired and a mortgage on the future earnings of a debtor—a mere expectancy, depending upon a variety of vague contingencies. Again, there are reasons of public policy which differentiate a mortgage on chattels to be acquired and one on wages to be earned. When a necessitous wage-earner is compelled to mortgage his future earnings, he mortgages not his chattels, but the means whereby he may live and maintain his family. The state necessarily has an interest in such contracts, and it is contrary to a wise public policy to give effect to them, except to a limited extent.

The rule on principle and deducible from the decisions of this court is that an assignment of wages to be earned in the future under an existing contract of employment to secure a present debt or future advances is valid as an agreement, and takes effect as an assignment as the wages are earned, but an assignment of wages to be earned, without limit as to amount or time, is void. O'Connor v Meehan, 47 Minn. 247, 49 N. W. 982; Steinbach v. Brant, 79 Minn. 383, 82 N. W. 651; Baylor v. Butterfass, 82 Minn. 21, 84 N. W. 640. Tested by this rule, it logically follows that the plaintiff, when the debtor filed his petition in bankruptcy, and when he received his discharge, had no lien on or vested security in the wages of the debtor thereafter to be earned by virtue of his contract, which was to take effect as an assignment when the wages were earned. The plaintiff then had at most a mere expectancy, depending on contingencies. We accordingly hold that the discharge in bankruptcy released the debtor from any liability of having his wages thereafter earned applied in payment of the debt from which he had been discharged.

It is urged by the plaintiff that the discharge of the debtor is personal to himself, and that it is not available to the defendant as a defense. This is a misapplication of the rule, for the debtor is not a

party to this action, and the defendant primarily owes the wages to him, and must, for its own protection, put the plaintiff to the proof of his claim to recover them, and bring to the attention of the court the fact of the debtor's discharge in bankruptcy.

It is also urged by the plaintiff that the validity of the assignment was conceded by the defendant on the trial of the action, and that he cannot question its validity in this court. We do not so understand the record, but, however this may be, the question of the effect of the debtor's discharge necessarily involved the question of the scope and effect of the assignment.

It follows that the facts admitted by the pleadings and found by the trial court do not sustain its judgment, and that the judgment must be reversed, and the case remanded, with directions to the trial court to amend its conclusions of law so as to direct judgment for the defendant on the merits.

Reversed and judgment ordered for defendant.