# HILLSDALE DISTILLERY COMPANY v. EDWARD BRIANT.[1]

### April 23, 1915.

### Nos. 19,151—(78).

**Intoxicating liquor — right to refund assignable.**

    1. The claim of a saloon keeper for the refundment provided for by section 3150, G. S. 1913, where his license has been revoked by operation of law,

---

[1] Reported in 152 N. W. 265.

though the refundment rests wholly in the discretion of the licensing authority, and the claim is not an existing right, is assignable, and the assignee takes title to the· money ordered refunded immediately upon the entry of the order therefor by the municipal authorities.

**Same — equitable assignment.**

2. Though perhaps void under the old rule of the common law, the transfer is within the rule of equitable assignments and valid.

Action in the municipal court of Cloquet to recover $129.52. The city of Cloquet was · served with garnishee summons, whereupon it was stipulated that the Duluth Brewing & Malting Co. should intervene in the original action and the garnishee proceedings. The intervener filed its complaint and plaintiff demurred to it. The demurrer to the intervening complaint was sustained, Skemp, J. From the judgment entered against the intervenor in favor of plaintiff, the intervener appealed to the district court for Carlton county. The appeal was heard before Dancer, J., who reversed the order of the municipal court, and certified that the question presented by the demurrer was doubtful and important. From the order of the district court, plaintiff appealed. Affirmed.

*Walter L. Case,* for appellant.

*Ralph E. Burdick,* for respondent.

BROWN, C. J.

Defendant Briant was a licensed saloon keeper at Cloquet, and his license covered the period from June, 1913, to June, 1914. A local option city election was held in November, 1913, which resulted in favor of "no license," and the license then and thereupon became revoked by operation of law. On the twenty-sixth day of November, 1913, defendant made a claim, duly verified, for a refundment of a portion of the license fee paid by him, and filed the same with the city clerk for presentation to the city council for such action in respect to the allowance of the same as the council might see fit to make under the authority of section 3150, G. S. 1913. On the same day, in good faith and for a valuable consideration, defendant assigned this claim, and all right to any refundment the city council might order, to the Duluth Brewing & Malting Co.

Thereafter, on December 26, 1913, by resolution formally passed and adopted the city council authorized and directed the refundment to defendant of the sum of $318.50 as and for the unexpired portion of the license so revoked. The resolution was approved by the mayor, and a warrant was drawn on the treasury for the amount so ordered refunded, payable to defendant. Plaintiff thereafter, on December 27, 1913, commenced this action in the municipal court of Cloquet to recover against defendant a balance due on account, and the city was made garnishee therein, the purpose of which was to attach and hold the money so ordered refunded to defendant for the payment of plaintiff's claim. The proceedings were in all things regular, and on the disclosure thereafter had the facts stated were presented by the proper city officer. The assignment of the refundment claim to plaintiff was in writing, but was not filed with the city clerk until after the commencement of the action. The Brewing & Malting Co. intervened in the action, and by complaint set forth its claim to the money so ordered refunded, the same being founded upon the assignment thereof on November 26, which was executed prior to the resolution of the council directing the refundment to be made. Plaintiff interposed a general demurrer to the complaint in intervention which the municipal court sustained. On appeal from that order to the district court the order was reversed. The court certified that the question was doubtful, and plaintiff appealed.

The sole question is whether the claim presented to the city council for a refundment of the unearned portion of the license fee is an assignable right within the law.

Our statutes (section 3150, G. S. 1913), provide that when a saloon keeper's license is revoked by operation of law, as therein stated, the licensing authority may return such part of the license fee as the license had yet to run at the time of revocation. This was held in Bender v. City of Fergus Falls, 115 Minn. 66, 131 N. W. 849, not to vest in the holder of the revoked license a legal right to a refundment, but to clothe the authorities with the discretion to order it or not as they saw fit and proper. The statute remains the same as when the decision was rendered, and the construction there

129 M.—15.

given the statute determines the rights and obligations of the parties in the case at bar. It thus appears that the saloon keeper has no vested or other legal right to a refundment; the claim does not arise out of any contractual relations with the municipality, and there is no obligation on its part which can be enforced either at law or in equity. The question of refundment rests wholly in the discretion of the municipal council. Is this then such a claim, or such a right, as may be transferred by assignment?

Under the early common law a chose in action not within the law merchant could not be assigned, and the rule had particular application to rights and things in expectancy and not in existence at the time of the assignment. But by statute and judicial decisions the old rule has been modified so that in most of the states of this country it is now held that all choses in action which survive the death of the holder and pass to his personal representative may be assigned precisely as under the rule of the law merchant. 1 Dunnell, Minn. Dig. §§ 763, 764. The extension of the rule was found necessary to keep the law in touch with advanced conditions in commercial activities and to sustain and uphold transactions of every day occurrence outside of and beyond the law merchant rule. Though under the strict letter of the old rule neither property nor property rights, having no present existence, can be mortgaged or transferred by assignment, yet to uphold and sustain many such transactions the rule of potential existence was invented, under which a mortgage of crops to be grown in the future, the assignment of wages to be earned under an existing contract of employment, and other rights having a substantial foundation in anticipation, have been held valid. Ludlum v. Rothschild, 41 Minn. 218, 43 N. W. 137; Minnesota Linseed Oil Co. v. Maginnis, 32 Minn. 193, 20 N. W. 85; Leitch v. Northern Pacific Ry. Co. 95 Minn. 35, 103 N. W. 704, 5 Ann. Cas. 63; Hogan v. Atlantic Ele. Co. 66 Minn. 344, 69 N. W. 1. And such is the rule now applied generally in this country (2 R. C. L. 956), as well as in England (Halroyd v. Marshall, 10 H. L. Cases 191). Courts of equity have further departed from the rule of the common law by upholding assignments of mere expectancies and possibilities of the future acquisition of the thing assigned. The

rule is tersely stated by Judge Story in Mitchell v. Winslow, 17 Fed. Cas. 527, as follows:

"Courts of equity do not, like courts of law, confine themselves to the giving effect to rights and interests, which are absolutely fixed and *in esse*. On the contrary they support assignments not only of choses in action, but of contingent interests and expectancies, and also of things, which have no present actual or potential existence, but rest in mere possibility only. In respect to the latter, it is true that the assignment can have no positive operation to transfer *in præsenti,* property in things not *in esse;* but it operates by way of present contract, to take effect and attach to the things assigned when and as soon as they come into *esse.*"

The rule thus stated was approved and applied by this court in Ludlum v. Rothschild, 41 Minn. 218, 43 N. W. 137, where Mr. Justice Mitchell, in the course of the opinion said:

"We are of the opinion that, except in cases prohibited by statute, whenever the parties by their contract in clear terms express an intention to create a positive lien upon personal property, not then owned but to be subsequently acquired by the mortgagor, whether then *in esse* or not, the mortgage attaches as a lien on the property as soon as the mortgagor acquires it, as against the mortgagor and all claiming under him either by voluntary transfer or with notice, precisely as if the property had been in being and belonged to the mortgagor when the mortgage was executed. Of course it is necessary, as in the case of any mortgage, that the property should be definitely pointed out, so that it may be distinguished or identified."

The rule applies to assignments as well as to chattel mortgages or other contracts. 3 Pomeroy, Eq. (3d ed.) 1291. The distinction between the equity rule and the common law is that under the latter the assignment passes a present title, while under the former, or rule in equity, the title passes at the time the thing assigned comes into being. 2 R. C. L. 598. The assignment must appear to have been made in good faith and for a valuable consideration, and the rights of subsequent claimants are governed by the principles of law pertinent to that subject.

In the case at bar, as already stated, the licensee had no enforceable

claim against the municipality; the matter of refundment rested wholly in the discretion of the municipal council. Yet from the viewpoint of the statutory recognition of the propriety of a refundment in such case, and the authority granted to make it, there was substantial foundation for the expectation that it would be made. There was, it is true, no certainty of favorable action by the council, nor is there any certainty that crops to be grown in the future will in fact be raised, nor that wages to be earned in the future will in fact be earned. In the one case the elements may intervene, and in the other the employer may discharge the employee. There is uncertainty in both cases, but not more indefinite or problematical than in the case of the discretionary refundment. It would seem therefore that this assignment comes within the rule of the common law as applied in the cases cited. But if it be conceded that it does not, and that at common law the assignment is void, we are clear that it is valid under the rule of equitable assignments. The assignment definitely pointed out the specific right intended to be transferred, and, though the subject matter thereof could come into actual existence only by subsequent action of the city council, it was made in good faith and for value and is valid in equity. The intervener therefore on the facts set forth in its complaint, which are all admitted by the demurrer, acquired title to the money immediately upon the passage by the city council of the resolution of refundment, subject of course to the defense that the assignment was in bad faith and without a valuable consideration. It is probable that in some states where law and equity are administered by separate courts, the assignment here in question would be held void at law. But in this state law and equity are administered by the same court, and the rules of both are applied in disposing of all controversies.

Order affirmed.