## In re FELLOWS.

District Court, N. D. Oklahoma.
Sept. 8, 1930.

Floyd Rheam, of Tulsa, Okl., for petitioner.

H. E. Chambers, of Tulsa, Okl., for Anchor Loan Co.

KENNAMER, District Judge.

On the 26th day of August, 1930, Harry G. Fellows filed his voluntary petition in bankruptcy, and was duly adjudicated a bankrupt. The schedules attached to his petition listed the Anchor Loan Company, of Tulsa, Okl., as one of his creditors. Prior to the adjudication in bankruptcy, and on the 31st day of July, 1930, the bankrupt executed an assignment of his future wages to the Anchor Loan Company to secure the payment of the sum of $25. Subsequent to the adjudication of bankruptcy, and on the 28th day of August, 1930, the Anchor Loan Company caused to be served upon the employer of the bankrupt, British American Oil & Producing Company, the assignment of wages which had been executed by the bankrupt prior to the filing of his petition in bankruptcy and the adjudication thereon. The matter is before the court upon the verified petition of the bankrupt, by which it is charged that the Anchor Loan Company is attempting to

collect the debt scheduled in bankruptcy, and seeking a restraining order against the loan company from collecting wages earned by the bankrupt subsequent to the adjudication in bankruptcy.

I am of the opinion that the prayer of the bankrupt's petition should be granted. Certainly, the adjudication in bankruptcy cut off the right of the bankrupt's creditors to enforce collection of his debts, and a discharge, if granted to the bankrupt, will discharge him of all of his debts, thus divesting the creditors of their rights to enforce collections, unless they have security for the payment of the debts, in which event they are relegated to their securities for payment. A discharge in bankruptcy when granted relates back to the date of adjudication. Collier on Bankruptcy (13th Ed.) vol. 1, § 17, subsec. d, p. 600; Bank of Elberton v. Swift (C. C. A.) 268 F. 305. Security for a debt, whether it be a mortgage, pledge, assignment, or any other form, is merely an incident to the debt or obligation; the debt or obligation is primary, and the security for its payment is incidental, having as its purpose the security and assurance for the payment. If there is no debt, the security is of no value or benefit to any but its owner, as it has no purpose to perform; the usual case being the payment of a secured debt, in which event the holder of the security has no further interest or equity in the security. In bankruptcy, the debt continues, but it is discharged and becomes unenforceable; rights attach to securities, and such rights may be enforced against the property of a bankrupt which are incumbered by contracts of security, as mortgages, assignments, etc. However, before any rights may attach, there must be in existence some property or thing which is subject to and incumbered by the contract for security. An assignment of unearned wages to secure the payment of a dischargeable debt creates no lien until the wages have been earned; and cannot be enforced as to wages earned after the date of adjudication. The assignment of wages operates and becomes effective as the wages are earned, and attaches to the earned wages as security for the payment of an enforceable debt. The lien of the assignment attaches as soon as the wages are earned, and something comes into existence upon which such a lien may attach. There can be no lien upon what does not exist, and there is no lien until the property or thing comes into existence to which a lien can attach.

The learned judge in the case of In re West (D. C.) 128 F. 205 at page 206, in considering a similar situation, aptly stated: "The discharge in bankruptcy operated to discharge these obligations as of the date of the adjudication, so that the obligations were discharged before the wages intended as security were in existence. The law does not continue an obligation in order that there may be a lien, but only does so because there is one. The effect of the discharge upon the prospective liens was the same as though the debts had been paid before the assigned wages were earned. The wages earned after the adjudication became the property of the bankrupt clear of the claims of all creditors." As there was no lien at the date of adjudication, as nothing existed upon which a lien could attach, the wages not having been earned, and as the adjudication cut off the rights of creditors to enforce collection of their debts, the loan company is in the position of all of the other unsecured creditors. See the following cases for similar rulings: In re West, supra; In re Lineberry (D. C.) 183 F. 338; In re Gillespie (D. C.) 209 F. 1003; In re Green (D. C.) 213 F. 542; Leitch v. Northern Pacific R. R. Co., 95 Minn. 35, 103 N. W. 704, 5 Ann. Cas. 63; Hupp v. Union Pacific R. R. Co., 99 Neb. 654, 157 N. W. 343, L. R. A. 1916E, 247. Collier on Bankruptcy (13th Ed.) Vol. 1, page 600, subsec. d.

Massachusetts, as well as other states, has held that an assignment of future wages creates a lien. I am unable to accept such holdings, for the reason that the basis for the decisions is unsound. It is asserted that the laborer has an interest in wages to be earned in the future by virtue of his contract of employment. As previously indicated, there can only be a lien if it attaches to something. Pursuing the reasoning of the Massachusetts holding, there would only be a lien upon the interest the laborer has in wages to be earned, but not upon the wages as they had not come into existence. In my opinion, the interest of a laborer in future wages is not such an interest as may be subjected to a lien by assignment, because of the indefiniteness and uncertain features of such an interest. The case referred to is Citizens' Loan Association v. Boston & Maine R. R., 196 Mass. 528, 82 N. E. 696, 14 L. R. A. (N. S.) 1025, 124 Am. St. Rep. 584, 13 Ann. Cas. 365.

The Bankruptcy Act, by its appropriate provisions, affords protection to a bankrupt against the collection of debts after adjudication, and confers powers upon the bankruptcy court to protect the bankrupt. Bankr. Act July 1, 1898, c. 541, § 2(15), 30 Stat.

545 (11 USCA § 11(15); In re Lineberry, supra.

Restraining order may issue, restraining the loan company from attempting to enforce the wage assignment, or from asserting any claim to wages earned by the bankrupt from and after the date of adjudication.