**NORTHWESTERN NAT. BANK OF MINNEAPOLIS**

v.

**A. M. CAMERON CO.**

**No. 14919.**

United States Court of Appeals Eighth Circuit.

Feb. 18, 1954.

Rehearing Denied May 11, 1954.

Rodger L. Nordbye, Minneapolis, Minn. (Loring M. Staples and Faegre & Benson, Minneapolis, Minn., were with him on the brief), for appellant.

W. L. Sholes, Minneapolis, Minn., for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

THOMAS, Circuit Judge.

The problem presented for determination in this case is whether the trial court erred in awarding to appellee a fund deposited by plaintiff in the registry of the court in an interpleader proceeding.

The plaintiff Holeproof Hosiery Company, hereinafter called Holeproof, is a Wisconsin corporation with its principal place of business in the city of Milwaukee. The defendant A. M. Cameron is a citizen of Illinois. He owns the defendant A. M. Cameron Company, an Illinois corporation located in Chicago. The defendant Northwestern National Bank of Minneapolis is a national banking association and is a citizen of Minnesota. It will be referred to as the Bank. The defendant Knitrite Hosiery Mills, Inc., herein called Knitrite, is a Minnesota corporation with its principal office and place of business located in the city of Minneapolis.

The jurisdiction of the federal court is based upon diversity of citizenship and the amount involved.

In the complaint Holeproof alleged that in November, 1949, it commenced a course of dealing with Knitrite whereby Knitrite manufactured and sold to plaintiff women's hosiery and plaintiff purchased such hosiery and sold to Knitrite nylon yarn; that their course of business resulted in a running account between them reflecting the amounts owing by plaintiff Holeproof to Knitrite and the credits for payments made, goods returned and nylon yarn furnished. No contract between the parties was alleged, and the evidence showed that none existed. The course of business was terminated prior to the commencement of this suit, and the account showed a balance due to Knitrite in the

amount of $14,333.38 in which plaintiff claimed no interest, and which amount was paid into the registry of the court.

Plaintiff stated its reason for paying the fund into court was that it had been notified by both the Bank and the A. M. Cameron Company or A. M. Cameron individually that the account had been assigned to the Bank and to A. M. Cameron individually; and plaintiff prayed that defendants be required to interplead and set up their respective rights to the fund deposited to the end that the fund might be awarded to the rightful owner, that plaintiff might be discharged from further liability and that it might be awarded costs and attorney fees. Copies of the account and of the correspondence with the claimants were attached to the complaint.

Defendant Bank answered admitting the course of business between plaintiff and Knitrite and alleging that pursuant to a course of business between the Bank and Knitrite during the year 1949 up to December 22, 1949, the Bank had loaned various sums to Knitrite secured by assignments to it of accounts receivable which were owed to it by plaintiff Holeproof, including any additions thereto, copies of which assignments were attached; that on April 24, 1950, it had obtained judgment in the state court against Knitrite for the amount due it in the sum of $6,388.20 for loans made, no part of which had been paid, and for which it was entitled to payment out of the sum deposited in court with interest. It was alleged, also, that the assignments to the Bank were prior to any assignments allegedly obtained by other defendants in the action and that all other defendants had knowledge of or should have known of the assignments to the Bank.

The defendants, A. M. Cameron, A. M. Cameron Company, a corporation, and Knitrite, a corporation, filed a joint answer, after the Bank's answer had been filed and read by the said Cameron and officers of the corporations. They admitted the jurisdictional facts alleged in the interpleader complaint. It was then alleged that in 1947 and 1948 Knitrite was indebted on promissory notes to various persons for the sum of $88,000 secured by a pledge of all its capital stock; that in 1947 A. M. Cameron loaned Knitrite $33,000 secured by a chattel mortgage covering all of its personal property including equipment and physical assets of every kind connected with its manufacturing plant. In 1949 Knitrite's manufacturing rapidly declined and its equipment rapidly depreciated because of changing styles and industrial innovations. Its creditors threatened bankruptcy unless the unpaid balance of $86,000 was paid. On December 16, 1949, Cameron purchased the outstanding notes with an unpaid balance of $86,000, for which he paid $30,000. Knitrite was then insolvent and unable to meet the current demands of its creditors.

Cameron admits that the Bank made certain loans to Knitrite, the last of which was for $1,200 made on December 22, 1949; he alleges that it made no loans to Knitrite thereafter.

The chattel mortgage taken by Cameron on the equipment of Knitrite contained a provision that if the mortgagee should at any time deem himself insecure he could take possession of all the mortgaged property at any time. On or about December 23, 1949, Cameron deeming himself insecure took possession of all of the mortgaged property and thereafter on March 20, 1950, perfected his title by a sale on foreclosure of his mortgage.

These defendants admit that Knitrite assigned certain specified accounts to the bank on December 9, 1949, on December 15, 1949, and on December 22, 1949, prior to the date on which Cameron took over the plant under his chattel mortgage and that all of such accounts were collected by the Bank except for certain setoffs approved by the Bank.

It is then alleged that in December, 1949, A. M. Cameron made an arrangement whereby he permitted Knitrite to operate the plant then owned by him to manufacture goods for him, all products

so created to be the property of A. M. Cameron and to be shipped as ordered by him. Pursuant to this agreement from December 29, 1949, to May 29, 1950, all labor costs, materials, leasehold, insurance protection, Social Security, Unemployment and Payroll taxes, and all other expenses have been advanced exclusively by A. M. Cameron in the net amount of $31,470.36; that all the Knitrite accounts are the property of A. M. Cameron; that since December 29, 1949, Knitrite has had no ownership in said property nor in the accounts arising by reason of its sale, nor power or authority to sell or transfer said accounts to the Bank or to anyone else. As further protection of his rights A. M. Cameron on December 29, 1950, caused Knitrite to assign to A. M. Cameron Company any and all sums to become due upon invoiced sales from Holeproof from December 29, 1949, to May 31, 1950.

It is further alleged that a certain assignment to the Bank by Mr. Cope, president of Knitrite, on January 26, 1950, was made without authority and is void.

And Cameron prays that the court adjudge that A. M. Cameron and the A. M. Cameron Company have at all times been the owners of the $14,333.38 deposited in the registry of the court; and for judgment against plaintiff for that amount with interest, and that the Bank take nothing by its asserted claim.

On July 10, 1950, the court entered an order discharging plaintiff Holeproof, awarding it costs out of the fund in the registry of the court, without prejudice to the rights of the interpleaded defendants.

On September 15, 1950, the Bank stipulated that all of the funds paid into the court by Holeproof could be released to defendant A. M. Cameron Company except $7,250. It was further stipulated that no allocation of accounts should occur because of this partial release.

Prior to the trial plaintiff's costs were allowed in the amount of $23.48 and an attorney's fee in the amount of $400 payable out of the fund on deposit in the court.

The case was tried to the court without a jury, at the conclusion of which the court filed a memorandum opinion, made findings of fact and conclusions of law, and entered judgment adjudging that the Bank has no claim to the fund on deposit and releasing the fund to the defendant A. M. Cameron Company, from which judgment the Bank has appealed.

The fund on deposit in the registry of the court arose from invoices of sales made by Knitrite to the interpleader plaintiff Holeproof during the period from February 1, to April 17, 1950.

The Bank claims that it is entitled to the fund on deposit because of four assignments prepared by the Bank and executed by Knitrite on December 9, 15, 22, 1949, and on January 26, 1950. The Bank relies upon the following provisions in each of the assignments:

"* * * in consideration of financial accommodations given or to be given or continued to or furnished the undersigned [Knitrite] by Northwestern National Bank of Minneapolis, Minnesota, * * * and as collateral security for the payment of any and all indebtedness, obligation or liability of any kind whatsoever, now or hereafter owing from the undersigned to the Bank * * * does hereby sell, assign, transfer and set over and pledge unto the Bank all the right, title and interest of the undersigned * * * on all those certain accounts receivable, contracts and invoices described in the schedule hereto attached, *and all future additions to all said accounts receivable, contracts and invoices, together also with all additional amounts, if any, payable under any contracts, purchase orders or invoices which are amendatory, supplemental or in addition to the contracts, purchase orders or invoices above described* * * *" (Emphasis supplied).

It was and is the contention of the Bank that the italicized provision of these assignments attached to the invoices in December, 1949, and on January 26, 1950, encompassed the shipments thereafter made by Knitrite to

Holeproof during the period from February 1 to April 17, 1950; that the description in the assignments was adequate to identify the future additions to the Holeproof account; and that the A. M. Cameron claim to the Holeproof account is that of a second assignee; and that, therefore, the Bank is entitled to the fund in the court.

The A. M. Cameron Company contends that it is entitled to the fund on the grounds (1) that there were no "future additions" to the invoices assigned to the Bank and (2) that on and after December 23, 1949, Cameron had both title to and possession of the Knitrite plant and that the merchandise described in the invoices in question was Cameron property.

The findings and conclusions of the court all support the contentions of the appellee.

■■ The rights of the parties are controlled by the law of Minnesota. By that law the conclusion of the trial court is in our opinion correct. The Bank's claim to the proceeds of the sales of hosiery by Knitrite to Holeproof between February 1 and April 17, 1950, fails for two reasons. First, no contract covering those sales was in existence prior to the actual sales and deliveries between Knitrite and Holeproof, nor at the time the assignments to the Bank were made; and, second, the Bank's assignments relied on by it here did not refer to or identify any particular "addition" or subject matter assigned. The Minnesota law on these points is made clear by the decisions of the Supreme Court of that state.

■ The rule as to specific identity of subject matter in a contract creating an interest in or lien on property rights to be assigned or created in the future is the same in assignments of such rights as in chattel mortgages. Hillsdale Distillery Co. v. Briant, 129 Minn. 223, 152 N.W. 265; Ludlum v. Rothchild, 41 Minn. 218, 43 N.W. 137, 139. In the Ludlum case the Court said: "Of course, it is necessary, as in the case of any mortgage, that the property should be definitely pointed out, so that it may be distinguished or identified." And where an assignment is in general terms parol evidence is not admissible to show that the parties intended that the assignment was applicable to a particular fund. Live Stock State Bank v. Hise, 150 Minn. 301, 185 N.W. 498.

The undisputed evidence in the case supports the finding of the court: "That each time the Bank made an advance or loan to Knitrite it required and took an assignment of a specific invoice; that there were no future additions to the specific invoices assigned; that there was no evidence offered showing an intention to assign the subsequent sales and shipments and there was no identification or description of the subject matter of future additions included in the said assignments."

■ The Bank contends further that the "future additions" clause in its assignment should be given the effect of an equitable assignment superior to the rights of Cameron. This contention fails also because of the failure of the assignment definitely to point out the property subject to the equity. Ludlum v. Rothchild, supra.

■ In considering the equities of the parties, the relations of all the parties should be considered. Here the Bank did not advance any money to Knitrite after December 23, 1949. Knitrite was then insolvent. It owed Cameron $86,000 on notes purchased by him and $22,000 on a note secured by a chattel mortgage. Cameron took possession of the plant under his chattel mortgage. He then arranged to permit Knitrite to operate the plant and manufacture goods for him. Under this arrangement he advanced the further sum of $31,470.36 to pay the expense of operating the plant, so that the Bank's claim thereafter to the products of the plant was equitably inferior to the rights of Cameron. Knitrite as a corporate entity had no interest in the products of the plant during the period here in question.

It did not own the products and it could not assign an interest in them to the Bank. All the shipments from Knitrite to Holeproof made between February 1, 1950, and April 17, 1950, were the property of Cameron. He owned all the capital stock of Knitrite at that time and he had taken possession thereof under his chattel mortgage and operated it at his own expense. 6 C.J.S., Assignments, § 84a.

The decision of the court was correct. The judgment appealed from is accordingly

Affirmed.